ANGELO LIAKOS *vs.* ANTHONY MORENO.

Suffolk.    May 4, 1966. — June 8, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Practice, Civil,* Charge to jury; Requests, rulings and instructions; Exceptions: what questions open.

Where the judge in his charge at the trial of an action of tort erroneously took a principal issue from the jury and at the conclusion of the charge the plaintiff made and the judge refused a request for an instruction on that issue which sufficiently raised the point that the original charge was inadequate as it stood, an exception by the plaintiff to the refusal of the request was sustained following a verdict for the defendant even though the request was made late under Rule 71 of the Superior Court (1954) and was imperfect in form and the exception was not to the error in the original charge.

TORT.    Writ in the Superior Court dated January 11, 1961.

The action was tried before *Lurie, J.*

*Joseph J. Hurley* for the plaintiff.

*Frank P. Hurley* for the defendant.

SPALDING, J.    In this action of tort the plaintiff, a minor, seeks to recover for pre-natal injuries alleged to have been caused when his mother, eighteen days before his birth, was struck by an automobile driven by the defendant.    The case

Liakos *v.* Moreno.

was tried to an auditor, who found for the defendant. Thereafter it was tried to a jury on the auditor's report and other evidence, and the jury also found for the defendant. The sole exception arises out of a portion of the judge's charge, and it arose in these circumstances.

The plaintiff's mother testified that "she suffered vaginal bleeding after the accident up to the time of the delivery of the plaintiff, slightly less than three weeks later." The plaintiff was born "a cerebral palsy baby." The medical evidence connecting the cerebral palsy with the accident came mainly from two doctors called by the plaintiff. Dr. Eugene N. Binder, who saw the plaintiff's mother a few days after the plaintiff's birth, testified that his opinion that there was a causal connection between the accident and the plaintiff's condition was based on a history obtained from the mother. She told him that there was no vaginal bleeding before the accident, that the bleeding developed immediately after sustaining a blow in the abdomen at the time of the accident, and that it continued until the plaintiff was born. This, he said, would indicate a separation of the placenta, which would reduce the oxygen supply to the brain of the foetus. In response to questions by the judge, Dr. Binder stated that this vaginal bleeding was the "main factor" on which his opinion was based. He later testified that the injury to the plaintiff's mother unaccompanied by vaginal bleeding would be sufficient to produce cerebral anoxia (lack of oxygen in the brain), a cause of cerebral palsy, and that he was of opinion that a causal relationship existed "between the accident and the birth of this cerebral palsy child," even in the absence of vaginal bleeding.

Dr. Louis Burke, an obstetrician called by the plaintiff, testified solely on the basis of hypothetical questions; he had never seen or treated the plaintiff's mother. He testified that vaginal bleeding following the accident would be of "extreme significance." But he also testified that the pain in the abdomen described by the plaintiff's mother was one of the prime symptoms of separation of the placenta, and that such a separation could occur without bleeding. Later,

in response to a question by the judge, he stated that if vaginal bleeding was not present following the accident his opinion "relative to separation of the placenta . . . would be very untenable."

The plaintiff's mother was taken to the Boston City Hospital immediately after the accident and remained there three days. She reëntered the hospital about two weeks later for the birth of the plaintiff. With respect to the first visit the hospital record makes no mention of vaginal bleeding. As to the second visit there is an entry in the record that there was no bleeding.

The relevant portions of the charge are as follows: "[I]t is the assertion of Mrs. Liakos that she started to bleed vaginally at the scene of the accident; that when she came into the hospital she was bleeding; . . . that she continued to bleed throughout her stay at the hospital; and that when she returned for the birth of the child . . . she continued to bleed. . . . In connection with . . . [the testimony of Doctors Binder and Burke with respect to the separation of the placenta] it is for you to consider their testimony as to the importance that they laid upon the aspect of the vaginal bleeding, and it is for you to say whether their opinions which they expressed resulted from their taking as true the testimony given by Mrs. Liakos . . . relative to the immediate onset and the continuance of the vaginal bleeding. . . . Let us assume that you come to the conclusion that notwithstanding the statute which required the [hospital] records to be kept, and notwithstanding the agreement that these records are certified to be true and complete, that, nevertheless, you are of the opinion that she did bleed vaginally and that the hospital did not make any record of this, then it will be for you . . . to ask yourself the question, of what importance was the vaginal bleeding . . . as asserted. . . . Let us assume you come to the conclusion that you are not persuaded that Mrs. Liakos has sustained the burden of proof with regard to what occurred at Boston City Hospital, then . . . even though you have already . . . come to the conclusion that . . . [the defendant] was re-

sponsible by way of the striking, . . . this case would fall and . . . [the defendant] would be entitled to your verdict. . . . [I]f you come to the conclusion that . . . [the doctors were relying upon the history of vaginal bleeding in forming their opinions], and if you come to the conclusion that this lady was not telling the doctors the truth . . . then there is no basis for the opinion which they expressed, and this case would then go for the defendant . . . . If . . . you . . . are of the opinion that . . . [the defendant] was responsible for striking this lady, then you would come to the second aspect. If you . . . are persuaded, that, contrary to the hospital record, Mrs. Liakos bled as she asserted she did, and as she told Dr. Binder two days after she came back and as expressed in the opinion of Dr. Burke, then you would pass immediately to the third aspect of money damages.''

At the conclusion of the charge the plaintiff requested the following instruction: ''Even if there were no vaginal bleeding, if there was damage to the placenta so that there was a separation of the placenta that with reasonable medical certainty was caused by the accident of April 4, 1958, so that the separation of the placenta occurred and that there was concealed bleeding, as the doctors have testified, then even with no obvious vaginal bleeding, with reasonable medical certainty there was caused anoxia and resulting damage to the baby's brain, which resulted in the birth of a cerebral palsy baby of the diffuse asymmetric type.'' The judge stated, ''Have it appear that this was a request made at the conclusion of the charge, and it is denied.'' To this denial the plaintiff excepted.

Rule 71 of the Superior Court (1954) requires that ''Requests for instructions . . . shall be made in writing before the closing arguments unless special leave is given.'' No such special leave was granted in this case. But notwithstanding Rule 71, a party is entitled to an adequate charge on the controlling issues of a case and, where attention is properly directed to an omission and it is not remedied, an exception may be sustained if necessary to render substan-

tial justice. *Mahoney* v. *Gooch,* 246 Mass. 567, 571. *Deco-teau* v. *Truedsson,* 339 Mass. 759, 762–763. *Ricciutti* v. *Sylvania Elec. Prod. Inc.* 343 Mass. 347, 354.

By his charge, the judge in effect told the jury that if they found Mrs. Liakos's history of vaginal bleeding to be untrue, they should find for the defendant. This consti-tuted error regarding a central issue in the case. The de-fendant in his cross-examination of Dr. Binder elicited the opinion that without regard to the question of vaginal bleed-ing there was a causal relationship between the plaintiff's cerebral palsy and the accident. Thus the question of the defendant's liability in the absence of bleeding should not have been taken from the jury. It is true that the plain-tiff's exception goes not to the error in the original charge, but to the judge's refusal to give an additional requested instruction. But whether the request was directed to an omission or to an error in the judge's charge, we think it sufficiently raised the point that the original charge was inadequate as it stood. Nor did the fact that the requested instruction is imperfect in form relieve the judge from his duty to correctly and adequately charge the jury on one of the controlling issues in the case. *Bergeron* v. *Forest,* 233 Mass. 392, 402. *Bell* v. *Dorchester Theatre Co.* 308 Mass. 118, 123.

*Exceptions sustained.*