288 So.2d 299 (1974)
James F. CASALE, Appellant,
v.
CARRIGAN AND BOLAND, INC., Appellee.
No. 73-175.
District Court of Appeal of Florida, Fourth District.
January 11, 1974.
Rehearing Denied February 8, 1974.
Donald L. Gattis, Jr., of Maguire, Voorhis & Wells, Orlando, for appellant.
F.D. McKnight and William L. Eagan of Arnold, Matheny & Eagan, Orlando, for appellee.
WALDEN, Judge.
A real estate salesman claimed to have been wrongfully deprived of his earned real estate commission. His suit for damages was ended by a directed verdict against him during the course of a jury trial. We reverse the ensuing judgment *300 and remand for a full trial in order that he might have his day in court and have a fair opportunity to have a jury assess his entitlement to the fruit of his labor.
To set the stage, the plaintiff was a real estate salesman. He was employed by the defendant, a real estate brokerage firm named Carrigan and Boland, Inc. The defendant wore two hats and this is important. It was the broker and, most importantly, it was also the owner of the land which was sold. This sale of defendant's land was the basis of the salesman's claim for commission.
The facts are not in dispute. As is well known, we are obliged to resolve all inferences in favor of the plaintiff here and view the evidence in the light most favorable to him. 2 Fla.Jur., Appeals, § 302. Further, this is the criteria which should have been employed by the trial court in considering the motion for directed verdict. Seaboard v. Big Chief, Fla.App. 1968, 211 So.2d 21; Vertommen v. Williams, Fla. App. 1973, 287 So.2d 116. Opinion issued December 14, 1973.
Plaintiff had been employed by the defendant for several years and operated the defendant's branch real estate office. The prospect and ultimate purchaser of the land, Mr. Lynch, made the initial contact with the branch office by telephone and thereafter came to that office and met plaintiff. At that time the plaintiff took Mr. Lynch to the property in question and showed it to him. Plaintiff generally discussed the property with Lynch and projected the purchase price. Plaintiff prepared a map of the property for Lynch and discussed the matter of rental property yields of like nearby property. Lynch then indicated to plaintiff that he was interested and wanted to purchase. Plaintiff prepared and submitted a written contract of purchase to Lynch. The contract was not then executed only because Lynch wanted his attorney to first review its terms.
With the above, plaintiff telephoned defendant at defendant's main office and advised that the property was being sold and requested that it be taken off the market. Per defendant's custom, the request was approved and the property was reserved.
All this was in early November 1969, and on November 6th plaintiff visited defendant's main office and defendant, via its representative, Mr. Carrigan. The defendant was then advised again of the fact that plaintiff had a buyer for the property, Mr. Lynch. The possibility of subordination was discussed with defendant and this conversation was duly reported to Lynch by plaintiff.
Again on November 11th, plaintiff and the defendant (through Mr. Carrigan) discussed subordination so that the purchaser, Lynch, might get started with his construction project. On one or two more occasions before December 4th, plaintiff conferred with Lynch about closing the deal.
And now comes the problem. In mid December plaintiff left the state for two weeks. Upon return, the plaintiff found that during his absence and without his knowledge, consent or participation, the defendant had entered into an option agreement with Lynch for the sale of the land. This option was later exercised and the land conveyed from defendant to Lynch by deed dated June 15, 1970.
When defendant sought his commission upon learning of the option, the defendant's reply (via Mr. Carrigan) was that he should just forget the deal as Lynch did not have good credit and would probably not be able to exercise the option.
It is correct, and this is key, that under the terms of plaintiff's employment by defendant it was necessary for him to present to defendant a signed sales contract, together with a deposit, in order for plaintiff to be entitled to payment of a commission by defendant. This was not done here and it is the defendant's position that this, without more, disqualifies plaintiff's claim.
*301 Is the matter as simple as defendant contends? We think not. It is one of the most basic premises of contract law that where a party contracts for another to do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing the agreed thing. Indeed, if the situation is such that the co-operation of one party is a prerequisite to performance by the other, there is not only a condition implied in fact qualifying the promise of the latter, but also an implied promise by the former to give the necessary co-operation. Sharp v. Williams, Fla. 1939, 141 Fla. 1, 192 So. 476; Hanover Realty Corp. v. Condomo, Fla. 1957, 95 So.2d 420. With more ready reference to the instant case, the encyclopedic treatment reveals this basic proposition:
"148.  Condition Precedent.
"One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance. He cannot take advantage of his own wrong in such respect and relieve himself of responsibility to the promisee. Nor can he avail himself of a non-performance of such condition precedent, which he has himself occasioned against the consent of the promisee, in order to avoid his own liability on the contract." 7 Fla.Jur., Contracts.
See also 17 Am.Jur.2d, Contracts, § 382, and 17A C.J.S. Contracts § 468 b.
The detailed treatise exposition of the same rule is found in 3A Corbin on Contracts, §§ 767 and 768.
To hypothetically illustrate, suppose defendant contracted to pay for a basket of groceries upon delivery to defendant's "kitchen table." The defendant does not answer the door at the grocer's knock. The grocer leaves the grocery basket at the defendant's doorway, being unable to place it on the "kitchen table," and departs. Defendant, in the absence of the grocer, takes possession of the groceries and later refuses the grocer's demand for payment on the ground that the grocer did not deliver the items to the "kitchen table." The defendant received the benefit of the groceries for which he had contracted. He defeated the ability of the grocer to deliver the groceries in the manner contractually prescribed. The defendant in law is on infirm ground and is obliged to pay for the groceries regardless of the grocer's non-performance as concerns delivery to the "kitchen table."
Looking now to the evidence favorable to the plaintiff in this case and the allowable inferences that are available to the jury, it would be generally entitled to find that the plaintiff produced the prospect, Mr. Lynch, and was the procuring cause of the sale of the defendant's land to Lynch. It could find that the plaintiff performed every jit and jot of this contract except that he did not fulfill the requirement of presenting the signed contract and deposit. However, the jury would be entitled to infer and find in light of the mentioned authorities that the defendant knew full well of the plaintiff's negotiations and nearly consummated sale at the time it stepped into the picture and procured the contract and ultimate sale. In other words, the defendant, by taking advantage of the plaintiff's absence and going forward with the transaction did actively and wrongfully prevent the plaintiff from fulfilling the condition precedent. For similar factual case situations, see Knowles v. Henderson, Fla. 1945, 156 Fla. 31, 22 So.2d 384, 169 A.L.R. 600; Hart v. Pierce, Fla. 1929, 98 Fla. 1087, 125 So. 243; Oro Verde Groves, Inc. v. Fuchs, Fla.App. 1962, 136 So.2d 12; Sanders v. Devereux, 1963, 231 Md. 224, 189 A.2d 604. The defendant can not take advantage of its conduct in the premises and the plaintiff did, therefore, make out a more than sufficient case to withstand a motion for directed verdict.
There are a number of other facets or viewpoints that might be considered when *302 the case is re-tried. We would wonder in passing if the plaintiff had not substantially performed his contract so as to entitle him to recover. 7 Fla.Jur., Contracts, § 136. Another proposition that could be plumbed is the notion that the defendant, by accepting the partial performance of the contract and where the defendant by his own conduct prevents the plaintiff from making full performance, the plaintiff would be entitled to recover for such services, at least on the basis of quantum meruit, 7 Fla.Jur., Contracts, §§ 136, 137 and 138, and, of course, consideration should be given to whether the defendant waived the condition precedent because of his conduct. 7 Fla.Jur., Contracts, § 146.
Reversed and remanded for proceedings consistent herewith.
Reversed and remanded.
MAGER and DOWNEY, JJ., concur.