**Roland BOSSE, Plaintiff, Appellee,**

v.

**LITTON UNIT HANDLING SYSTEMS, DIVISION OF LITTON SYSTEMS, INC., Defendant, Third Party Appellant,**

v.

**WERNER ASSOCIATES, INC., Third Party Defendant, Appellee.**

No. 80–1166.

United States Court of Appeals, First Circuit.

Argued Dec. 4, 1980.

Decided April 8, 1981.

William E. Aivalikles, Nashua, N. H., with whom Holland & Aivalikles, Nashua, N. H., was on brief, for Roland Bosse and Helen Bosse.

William S. Orcutt, Manchester, N. H., with whom Wiggin & Nourie, Manchester, N. H., was on brief, for Litton Unit Handling Systems, Division of Litton Systems, Inc.

Theodore Wadleigh, Manchester, N. H., with whom Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N. H., was on brief, for Werner Associates, Inc.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Plaintiff Roland Bosse,[1] while employed by Werner Associates, Inc. (Werner), a subcontractor engaged in the installation of a catwalk or walkway in the Anheuser-Busch bottling plant in Merrimack, New Hampshire, fell when a hanger bolt sheared and a section of the walk let go. The component parts, in this instance with the bolt in place, had been supplied by the general contractor, defendant Litton Unit Handling Systems (Litton). Plaintiff sued Litton because of the bolt, and Litton cross-claimed against Werner upon a contract of indemnity. The jury found in favor of plaintiff against Litton, and the court ultimately ruled in favor of Werner on Litton's cross-claim. Consolidated appeals by Litton, and a cross appeal by plaintiff, raise a number of questions.

Units of the catwalk were shipped by Litton partially assembled, held together by bolts. As installation proceeded, with the parts adjusted to fit, the hangers attached to the ceiling and the plates constituting the walk were to be welded together. Until then the walkway depended upon the bolts. While plaintiff was standing on one of the unwelded plates and hammering it to adjust its position, a bolt sheared and he fell to the floor.

Basically, plaintiff's negligence complaint[2] was that Litton, who admittedly did not intend the plates to be walked on until welded, failed to alert Werner's workers to that fact by any form of written notification. In addition, it claimed the bolt was made of weak material, and had been further weakened by being overtorqued. Litton's witness testified that although actually the bolts were strong enough to support plaintiff, Litton had orally advised Werner in the past that unwelded plates were not to be stood upon; that the hangers could, and by good practice should, be adjusted before the plates are laid, and that it did not know that Werner was proceeding otherwise.[3] Litton's expert testified that the bolt had sheared not because of overtorquing, but because of excessive hammering. Perhaps the crowning piece in plaintiff's case was an acknowledgement by Litton's manager that it was "hazardous" to walk on an unwelded plate. We do not construe this opinion as an admission that Litton knew the hazard was to be experienced, but it was otherwise damaging.[4]

The jury found for plaintiff. Whether it found contributory negligence on plaintiff's part and adjusted the award downward cannot be told, because the court did not put a special question in this regard.[5] The court did put a special question as to their relative percentages if there was negligence by both Litton and Werner. To this the jury answered Litton, 65%, Werner, 35%.

---

1. A companion action by Mrs. Bosse tracks the issues and disposition of this one. This opinion disposes of cases Nos. 80–1165–69 and Nos. 80–1240–41.

2. The court, over plaintiff's objection, correctly dismissed a strict liability count. *See* post.

3. In the face of this unimpeached testimony, which plaintiff sought to dispose of during trial with a facetious remark, it is unpardonable for plaintiff to state in his brief that "Litton offered no evidence which even created any issue for the jury as to whether the use to which Mr. Bosse put the catwalk system was foreseeable or not," and for Werner to say, "The evidence was clear that both the plaintiff Bosse and Litton agreed that it was foreseeable that persons would walk over the catwalk ... unwelded." We should not have to read the record to verify the truth of statements in the briefs. Even less do we like to be thought of as not going to do so.

4. We note, as a matter of interest, that Werner, also, emphasized this testimony. From the standpoint of Werner's workmen's comp. carrier it was understandable that Werner should want Litton to be found liable to the plaintiff. *See* N.H.Rev.Stat.Ann. 281:14. From the standpoint of its indemnity agreement, however, it was masochistic. If standing on an unwelded plate was hazardous vis-a-vis Litton, it was hazardous vis-a-vis Werner, whose employees, subject to its sole supervision and control, performed the entire installation. Presumably it was because Werner caused plaintiff's use of the unwelded plate that the jury found it, too, to be liable. *See* post.

5. We urge courts to put such a question, as there are often post-verdict matters where this information can be valuable.

On Litton's appeal, the only substantial question in the main case relates to the charge. Of its fifteen pages, without intending any disparagement by our use of the phrase, the first six pages and the last six pages were standard boilerplate. In the central three pages all that was said with respect to Litton's liability, other than causation in fact, was, again, standard definitions of negligence, as failure to exercise the due care that should be exercised by a reasonbly prudent person, corporation, or manufacturer.

Later, in the midst of discussing contributory negligence and comparative negligence, the court interjected the following.

"A warning must adequately indicate the scope of the danger, and must designate, specifically, all of the dangers that may cause serious injury. And if you find that Mr. Bosse voluntarily encountered a known danger . . . ."

■ Thus the charge, in skeleton form, followed the two theories of plaintiff's negligence case: negligence in using a "crummy" bolt, and negligence in failing to warn. We say skeleton, because there was no flesh.[6] In fact, there were not even all the bones. Particularly, there was no instruction that for each of these claims a basic requirement was that Litton foresaw, or should have foreseen, the danger. *Corso v. Merrill*, 1979, 119 N.H. 647, 406 A.2d 300; *Thibault v. Sears, Roebuck & Co.*, 1978, 118 N.H. 802, 808–09, 395 A.2d 843, 847. On this aspect Litton had filed a number of requests. Following the charge it noted its objections.

"Litton excepts to the court's failure to give Litton's requests numbers four, five, seven, eight, insofar as our requests spoke of foreseeability; . . ."

■ Plaintiff objected to the court's treatment of defendant's duty to warn, and the court responded with a short supplemental charge:

". . . [I]f you find that Litton knew or should have known of a dangerous product or design, then they have the duty to warn the user, the ultimate user, of it."

This treatment of the foreseeability issue would seem ungenerous, at best, even with respect to defendant's duty to warn, considering the importance of the matter and the absence of any pertinent charge heretofore.[7] Moreover, it would be a highly sophisticated jury that would transfer these few words to the other aspect of plaintiff's case, to which most of the testimony related, the bolt's alleged deficiencies. The charge as a whole is fatally flawed by the absence of any direct instruction on foreseeability as a basic condition to plaintiff's claim for negligent manufacture.

Plaintiff contends that defendant failed to save its rights. It is true that we have frequently stressed that a mere recitation of numbered requests does not sufficiently serve F.R.Civ.P. 51's purpose of alerting the court. *United States v. Lachmann*, 1 Cir.,

---

**6.** This charge fell within the language of the court in *McNello v. John B. Kelley, Inc.*, 3 Cir., 1960, 283 F.2d 96, at 101–02.

"The court . . . charged on the law of negligence only in the most general and inadequate terms. The jury was merely told that negligence is '[T]he want of due and proper care.' Although they were also told that they must consider what an ordinary prudent man would do under the circumstances of the case the court at no time pointed out what the relevant circumstances in this case were. Moreover, an examination of the charge reveals that even this wholly abstract instruction was not given in a clear and understandable form. Furthermore, the court nowhere attempted to relate the evidence to the law and thus left entirely to the jury the task of particularizing the legal standard and working out the alternatives possible under the facts."

We have no objection to boilerplate as such, other than the general warning of possible inaccuracies contained in *Peymann v. Perini Corp.*, 1 Cir., 1974, 507 F.2d 1318, 1324 n.2, *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 but an all-purpose charge, fitting any and every case, does not fulfill the court's duty to supply the requirements of lay jurors, who must need apply to specific facts legal principles with which they are unfamiliar.

**7.** If plaintiff, not Litton, were complaining, he might point out that the charge, in addressing only the duty to warn the "ultimate user," seems ill suited to his case. *See* post. However, both parties were denied the opportunity to make further comment.

1972, 469 F.2d 1043, 1044, *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390; *Charles A. Wright, Inc. v. F. D. Rich Co.*, 1 Cir., 1966, 354 F.2d 710, 713, *cert. denied*, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673. Counsel did particularize, however, albeit minimally, that he wished the court to charge on foreseeability. This would not have spoken "distinctly" as a criticism of the form or adequacy of a foreseeability charge that had been given, but as alerting the court to the total failure to charge on the subject, the court's attention was necessarily drawn to the issue. Particularly was this so when the issue was so basic that the court should have charged on it even in the absence of a request. Even without requests the court has a "duty to correctly and adequately charge the jury on ... the controlling issues in the case," *Liakos v. Moreno*, 1966, 351 Mass. 90, 94, 217 N.E.2d 764, 767. It is enough that, after the charge, attention is called to the omission. *Mahoney v. Gooch*, 1923, 246 Mass. 567, 571, 141 N.E. 605, 606. There must be a new trial.

■ We turn to Litton's cross-action against Werner. Its subcontract provided that Werner shall

> "indemnify, hold harmless and defend Buyer and UHS (Litton) from all claims, demands, payments, suits, actions and judgments brought, recovered or executed against it or them on account of death, injury or damage sustained by any party, by reason of any act or omission of Installer or his agents, servants, employees or subcontractors, arising out of the work to be performed hereunder."

In light of the jury's finding that Werner was negligent,[8] by the seeming plain meaning of this language plaintiff's injury was "sustained ... by reason of [an] act or omission of [Werner] arising out of the work ... performed hereunder." The last act, and a but-for cause, was Werner's negligently permitting plaintiff to stand on an unwelded plate, either in disregard of Litton's alleged oral instructions, or simply because it was "hazardous" to do so quite

apart from any instruction (n.4, ante), and, particularly, to have permitted his hammering while so doing. The expert testimony was uncontradicted, indeed we would think it obvious, that hammering would cause additional strain on the bolt. Alternatively, the jury could have adopted Litton's claim that Werner should have insisted on the use of a safety harness, again, a final, causal act. We suspect that even a most naive jury might have looked askance at Werner's reply that the jerk on a safety line would have been as hazardous as a 20-foot fall to the floor.

The district court, however, held that Litton's own negligence barred it from recovery. Its reasoning was that indemnity agreements are to be strictly construed, and that intent to indemnify a party for the consequences of his own negligence must be unequivocally expressed. This strict construction rule has been losing favor, *see, e. g., Martin v. The Maintenance Co., Inc.*, 2 Cir., 1978, 588 F.2d 355 (New York law), and during the pendency of this appeal it was rejected by the New Hampshire court. *Commercial Union Assurance Co. v. Brown Co.*, 1980, N.H., 419 A.2d 1111. An indemnity agreement is now to be construed like any other contract, *i. e.*, according to the intent of the parties as determined by "the written agreement, all its provisions, its subject matter, the situation of the parties at the time it was entered into and the object intended." 419 A.2d at 1113.

As already stated, we believe the plain language of the agreement points toward indemnification whenever Werner is found at fault, regardless of Litton's concurrent negligence. *Martin v. The Maintenance Co., Inc.*, ante; *Aetna Casualty & Surety Co. v. L. K. Comstock & Co.*, D.Nev., 1980, 488 F.Supp. 732. Furthermore, if Litton were to be barred by its own negligence it would make the agreement pointless. In any accident where the claim is made that Litton's negligence contributed with Werner's, there are three possible results: (1) That Litton was not negligent. Obviously,

---

**8.** Litton's counsel conceded at argument that "act or omission" means negligence.

in such instance, there would be no need for indemnity. (2) That Litton's negligence was passive or secondary. In such event, Litton would be entitled to indemnification without an agreement. *Morrissette v. Sears, Roebuck & Co.*, 1974, 114 N.H. 384, 387, 322 A.2d 7, 9; *Sears, Roebuck & Co. v. Philip*, 1972, 112 N.H. 282, 294 A.2d 211; *Wentworth Hotel v. F. A. Gray, Inc.*, 1970, 110 N.H. 458, 272 A.2d 583. (3) That Litton's negligence was active. If Litton were denied recovery whenever its negligence was active, there would never be a time when the agreement served a purpose. It is axiomatic that constructions which render contract terms meaningless or futile are to be avoided. *Eastern Gas & Fuel Ass'n v. Midwest-Raleigh, Inc.*, 4 Cir., 1967, 374 F.2d 451, 454; *Robinson Co. v. Drew*, 1928, 83 N.H. 459, 462, 144 A. 67, 69. Rather, business parties should be expected not only to give language its normal meaning, but to give "a construction which will make it a rational business instrument." *See Berkal v. M. DeMatteo Constr. Co.*, 1951, 327 Mass. 329, 333, 98 N.E.2d 617, 620.

Finally, although it seems unnecessary to go further, we remark that a construction favoring Litton's recovery is the one which makes the most business sense quite apart from the fact that the plaintiff's construction would make it pointless. Where the indemnitor is the one on the job, and in control of the work, it will likely be the party best suited to prevent the loss in the first place and to defend the action if one occurs. If the indemnitee's negligence relieves the indemnitor of all responsibility under the agreement, the indemnitor's interests lie not in defending, but in joining forces with the plaintiff to charge the indemnitee, *see* n.4, ante, an unhappy deviation from a joint enterprise. We find no reason to depart from the language of the agreement, and hold it entitles Litton to indemnification by Werner for losses jointly caused by both.

■ On his cross-appeal plaintiff asserts that he was entitled to proceed in strict liability under Restatement (Second) of Torts § 402A, which is the law in New Hampshire. *Buttrick v. Arthur Lessard & Sons, Inc.*, 1969, 110 N.H. 36, 260 A.2d 111. The court was correct. Comment d to section 402A indicates that strict liability "extends to any product which is sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer." *See Lubowski v. Vecta Educational Corp.*, 1980, Ind.App., 401 N.E.2d 781; *Shawver v. Roberts Corp.*, 1979, 90 Wis.2d 672, 280 N.W.2d 226; *cf. Woods v. Luertzing Corp.*, 1979, 167 N.J.Super. 156, 400 A.2d 562. Manifestly that was not the case here; plaintiff was injured in the course of putting the catwalk into final shape. In these circumstances he is limited to his action for negligence.

There remains the scope of the issues on retrial. We are directed to no error, and see none, so far as the jury's finding of Werner's negligence is concerned. Werner made no complaint with respect to the charge on foreseeability, and, in any event, its own foreseeability would seem manifest. The issue of its negligence being "clearly separable," *Gasoline Products Co. v. Champlin Refining Co.*, 1931, 283 U.S. 494, 499, 51 S.Ct. 513, 514, 75 L.Ed. 1188 from Litton's, there is no basis for retrying it. Since Litton's right to indemnity has thus been established, it may tender its defense to Werner on the new trial.

While fine-spun theories may be advanced with respect to a different degree of plaintiff's contributory negligence, if any, being found on a new trial, we think that reality dictates that introducing the issue of Litton's foreseeability will either absolve it altogether, or leave the matter as the jury viewed it before. The new trial should be confined to the single question of Litton's liability.

In accordance with the foregoing, the judgment against Litton is set aside and a new trial ordered on liability, with the verdict to stand as to damages. In Litton's action against Werner, the judgment is set aside; the special verdict stands; and a judgment is to be entered in Litton's favor. The dismissal of plaintiff's strict liability count is affirmed.

## Costs in the District Court

Litton has appealed from the district court's taxation of substantial witness fees as costs in favor of plaintiff. At the moment these are at least in limbo, *cf. Farmer v. Arabian American Oil Co.*, 1964, 379 U.S. 227, 229, 233, 13 L.Ed.2d 248, 85 S.Ct. 411, 415, and permanently so, if Litton prevails on the new trial. However, the questions have been extensively presented, and it might not be amiss if we were to make some observations.

■ Taking the items chronologically, Litton, having been advised of the identity of plaintiff's experts, took their depositions. The court taxed their charges for such attendance as plaintiff's costs. This was error. The fees charged plaintiff by the experts for testifying for him in court would be taxable as plaintiff's costs. It was defendant, however, who took their depositions. While it did so, no doubt, because of their anticipated trial testimony for plaintiff, they were not then plaintiff's witnesses at that time, but were called by defendant, and defendant, not plaintiff, is the one under whatever may be the obligation. F.R. Civ.P. 26(b)(4)(C)(i). In this event, it is not plaintiff's costs.

■ Secondly, the court, in taxing costs in favor of plaintiff allowed fees to plaintiff's experts above the statutory amount. There is no room for such under F.R.Civ.P. 54(d) and *Henkel v. Chicago, etc., Ry. Co.*, 1932, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386. We see no reason for a different rule in diversity cases. *See City Bank of Honolulu v. Rivera Davila*, 1 Cir., 1971, 438 F.2d 1367, 1371. If *Henning v. Lake Charles Harbor & Terminal District*, 5 Cir., 1968, 387 F.2d 264, holds any differently, which we doubt, rather than being decided on special facts, we do not follow it. Variations between state and federal rules on costs "do not appear likely to promote forum shopping or to affect 'the outcome of the litigation' in any significant way and therefore employing federal law does not violate the *Erie* principle." 10 Wright & Miller, Federal Practice and Procedure, § 2269 at 153 (1973). The federal statute must govern.