**Gerard T. OUIMETTE and Helen Ouimette, Plaintiffs, Appellants,**

v.

**E.F. HUTTON & COMPANY, INC., Defendant, Appellee.**

**No. 83–1751.**

United States Court of Appeals, First Circuit.

Argued March 8, 1984.

Decided July 18, 1984.

Robert J. Doyle, Boston, Mass., with whom Kehoe, Doyle, Playter, Novick & Strimaitis, Boston, Mass., was on brief, for plaintiffs, appellants.

Paul Curcio, Providence, R.I., with whom Paula A. Kelly, and Hinckley & Allen, Providence, R.I., was on brief, for defendant, appellee.

Before COFFIN and BOWNES, Circuit Judges, and GIERBOLINI,* District Judge.

GIERBOLINI, District Judge.

This is an appeal from a jury verdict entered for the defendant in a breach of agency relationship action brought under diversity jurisdiction in the United States District Court for the District of Rhode Island.

On May 16, 1979 plaintiffs, Gerard T. Ouimette and Helen Ouimette (the Ouimettes) placed an order for a purchase of 10,000 shares of Caesar's World (Caesar's) stock with defendant E.F. Hutton (Hutton). On that same day Hutton traded, at the Ouimettes' request, some of the Caesar's stock. Then, on the following day, May 17, 1979, Hutton "sold out" all of Caesar's shares without the Ouimettes' authorization, effectively cancelling their account. Thereafter, on May 25, 1979, plaintiffs "settled their account" (paid for the 10,000 shares purchased) and received $7,000 as profits from Hutton.

The Ouimettes brought suit against Hutton to recover additional profits they would have received had Hutton not sold the stock on May 17, 1979. They alleged in essence that the unauthorized sale of the stock constituted a breach of their agency relationship. Defendant, on the other hand, claimed that no agency relationship existed between them because before Hut-

---

* Of the District of Puerto Rico, sitting by designation.

ton ever agreed to purchase the stock for the Ouimettes it demanded a deposit from plaintiffs by the end of the next business day. Because the deposit was not received on May 17, 1979 Hutton "sold out" the stock.[1]

At trial, Mr. Ouimette testified in relevant part that Hutton requested the deposit after the price of the stock had fallen to $65.00 per share. Nevertheless, two of Hutton's employees, Steven Fusco, the broker dealing directly with the Ouimettes, and John Pliakas, Fusco's supervisor, contradicted Mr. Ouimette's testimony and testified that they demanded the deposit before the requested purchase of the stock be made. The issue went to the jury, and a verdict for defendant was rendered.

■ On appeal, plaintiffs assign two errors. First, they allege that the district court erred in refusing to instruct the jury on the issue that Hutton may have waived the deposit requirement by accepting commissions derived from the trading of the Caesar's stock. Second, they aver that the district court also erred in instructing the jury that the Ouimettes may have ratified Hutton's unauthorized sale by accepting the $7,000 profit.[2]

## I

### Waiver of Deposit

Plaintiff's proposed instruction read in pertinent part as follows:

1. To meet the deposit requirement, the Ouimettes offered to transfer accounts held by the brokerage firm of Paine, Weber to E.F. Hutton. However on the day the deposit was due Paine, Weber informed Hutton that the authorization for the transfer had not yet been signed. In fact, once the form was signed the transfer would have taken approximately ten days. Based on that information Hutton cancelled plaintiff's account.

2. Hutton sets forth the argument that plaintiffs are barred from claiming error in the instructions to the jury because a general verdict was entered, and such a general verdict will stand if it can be supported by one of the distinct defenses presented to the jury. *Burke v. Cremeens*, 114 Ohio App. 313, 182 N.E.2d 324 (1961). Hutton alleged three defenses before

If the transfer of the stock and cash portfolio was a condition precedent [sic] as contended by the Defendant, the Defendant's unauthorized actions prevented performance by the Plaintiff. *Casale v. Corrigan [Carrigan] & Boland, Inc.*, 288 So.2d 299, 301 (Fl.App.1974) [sic]. Further, the condition precedent was waived by the Defendant when it was paid a commission for the purchase and sale of the stock which constituted a benefit of the executed contract. (citations omitted). Therefore, if you find that the Defendant's actions prevented performance of the condition precedent by the Plaintiff or the Defendant's action of accepting the benefit of the contract (brokers commission) was a waiver of the condition precedent, then your verdict must be for the Plaintiffs.

Obviously, this requested instruction is not a model of clarity. Nonetheless, the Ouimettes insist that even if it was "less than artful", it still imposed upon the district court a duty to submit it to the jury in proper form because the legal theory is necessary to the determination of the issue.

Defendant, on the other hand, argues that plaintiffs failed to clarify the confusing charge or to offer any further explanation. They thus allege that plaintiffs waived any right to appeal the district court's denial to instruct on the issue of waiver.

Plaintiffs' proposed instruction was brought to the district court's attention for

the district court: 1) an agency relationship would have been created only if the deposit requirement would have been met; 2) plaintiffs ratified any wrongful act of the defendant by accepting the $7,000 profit, and 3) plaintiffs suffered no damage in the transaction. Because no error has been claimed as to the damages charge, defendant contends that the jury's verdict can be supported on that basis alone. The assertion is that any error as to the other instructions would be cured by the general verdict. We disagree. An error in a trial court's instruction to the jury is not rendered harmless by the fact that the jury returned a general verdict for the defendant. *Harless v. Boyle-Midway*, 594 F.2d 1051, 1055 n. 2 (5th Cir.1979); *see Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 662 (1st Cir.1981).

the first time after the conclusion of all the evidence. At that time, the following colloquy ensued:

> The Court: Well, that's telling them that as a matter of law, the acceptance of the commission is a waiver, is that right?
>
> Mr. DeCesare (counsel for plaintiffs): That's correct your honor.
>
> The Court: That's what you want?
>
> Mr. DeCesare: That's correct ...

Plaintiffs' counsel then proceeded to discuss another requested instruction. The trial judge did not rule on any of the proposed instructions. Instead, he advised the parties that they would have some time later to consider the instruction he intended to submit to the jury.

At the next morning's session plaintiffs failed to bring to the attention of the court the proposed waiver instruction. Other instructions nonetheless were discussed and objections made thereto. The district judge then indicated that he would note both parties' exceptions to the requests which were not given, and that after the jury went out he would go over them with the parties so that they would have a record. After having instructed the jury, the trial judge ruled that the requested waiver instruction was "denied as confusing". He then stated: "[t]he parties may have an exception. Put these together for the record please. Anything further?." Both parties answered in the negative.

The aforementioned recitation of what transpired reveals that plaintiffs never distinctly stated that they objected to the denial of their instruction as required by Rule 51 of the Federal Rules of Civil Procedure.[3] In contrast, they did object to the inclusion of defendant's ratification instruction and to the court's instruction on what constitut-

ed reasonable time within which plaintiffs might have replaced the stock.

■ Nevertheless, the trial judge noted the parties' objections to the instructions not submitted, effectively including in the record objections that were never verbally made. This is contrary to Rule 51 and the established practice in this circuit, which require the trial judge to afford the parties an opportunity to distinctly state their objections and the grounds on which they are based. The trial judge is further required to inform counsel of its proposed action upon requests prior to their arguments to the jury so that counsel may argue intelligently. *Dunn v. St. Louis-San Francisco Railway Company*, 370 F.2d 681, 683–684 (10th Cir.1966); *Bouley v. Continental Casualty Company*, 454 F.2d 85, 88 (1st Cir.1972); *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d 970, 976 (1st Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 128 (1972); *French v. United States*, 487 F.2d 1246, 1247 (1st Cir.1973); *Carrillo v. Sameit Westbulk*, 514 F.2d 1214, 1219 (1st Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 385 (1975); *Gay v. P.K. Lindsay Co., Inc.*, 666 F.2d 710, 712 (1st Cir.1981), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982); *McGrath v. Spirito*, 733 F.2d 967 (1st Cir.1984).

District courts should heed the following admonition by Judge Aldrich, sitting by designation, in *Dunn, supra,* at 683–684:

> The manner in which objections were sought to be preserved after the charge paid lip service to the requirements we have previously voiced, (citation omitted) but defeats their purpose. We scarcely need to repeat that the purpose is at least two-fold, to make it abundantly clear to the court not only what is the

---

3. Rule 51 provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

party's position, but in what way the charge is believed to depart therefrom, and to give the court full opportunity to make corrections. (citations omitted) The duty imposed upon counsel of "stating distinctly the matter to which he objects and the grounds of his objection" cannot normally be performed until the charge has been heard in its entirety. Usually until then it cannot be told "distinctly" to what extent a request has not been given. The court may believe that it has fully done so. As to this an a priori exception "to the extent that the request is not given in substance", meets none of the rules requirements. (citations omitted). In fact, we find little distinction between what happened in the case at bar and a so called general exception to the charge, which is universally condemned. (citations omitted).

As we recently held in *Spirito, supra,* Rule 51 is binding on both the court and attorneys and neither can circumvent it.

■ Notwithstanding the above, because the trial judge did state that he would preserve the parties' objections and they relied on the court's statements, and since our warning in *Spirito* is so recent, we proceed this once to consider whether the refusal to instruct the jury on the issue of waiver constituted reversible error. *See Dunn, supra.*[4] Although all parties are entitled to adequate jury charges upon the controlling issues of the case, the district court need not follow the exact language of the parties' requested instructions. *Wolff v. Commonwealth of Puerto Rico,* 341 F.2d 945, 946 n. 1 (1st Cir.1965); *McKinnon v. Skil Corp.,* 638 F.2d 270, 274 (1st Cir.1981). The court is only required to properly apprise the jury of the applicable law. *Turner Construction Co. v. Houlihan,* 240 F.2d 435, 439 (1st Cir.1957);

*Sears, Roebuck & Co. v. Penn Central Co.,* 420 F.2d 560, 564 (1st Cir.1970); *McKinnon, supra.*

■ Moreover, a requested instruction to the jury may be correctly refused if it is improper or erroneous, and the district court is not required to correct it, *Stewart v. Capital Transit Co.,* 108 F.2d 1 (D.C.Cir. 1939), *cert. denied,* 309 U.S. 696, 60 S.Ct. 607, 84 L.Ed. 1036 (1940); *Bissett v. Ply Gem Industries, Inc.,* 533 F.2d 142, 145 (5th Cir.1976); *Bueno v. City of Donna,* 714 F.2d 484, 490 (5th Cir.1983), unless it is a matter of fundamental importance. *Chernack v. Radlo,* 331 F.2d 170, 172 (1st Cir.1964). In these circumstances, the imperfect proposed instruction may alert the court to the need of a particular charge. Even without requests the court has a duty to correctly and adequately charge the jury on the controlling issues in the case. *Bosse v. Litton Unit Handling Systems, Etc.,* 646 F.2d 689, 693 (1st Cir.1981), citing from *Liakos v. Moreno,* 351 Mass. 90, 94, 217 N.E.2d 764, 767 (1966).

■ There can be little doubt that plaintiffs' request was erroneous. It effectively sought to instruct the jury that as a matter of law the acceptance of a commission constituted a waiver. However, waiver is a question of fact for the jury to decide. *Gagner v. Strekouras,* R.I., 423 A.2d 1168 (1980). The trial judge correctly refused to submit it to the jury.

■ We turn now to determine whether the court should have submitted an instruction of its own on the issue that defendant may have waived the deposit requirement by accepting commissions on the trading of plaintiffs' stock. On that issue the district court correctly instructed the jury to determine the content of the agreement between

---

**4.** Even in the absence of the district court's statements we could still entertain the appeal in the interest of justice. *Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir.1976). "Where there is plain error we may notice such error of our own volition. This rule should be used sparingly and only on exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." *Nimrod v. Sylvester,* 369 F.2d

870, 873 (1st Cir.1966). Upon review of the record we find that the plain error exception cannot be invoked herein. This case does not present an error which may seriously affect the fairness, integrity or public reputation of judicial proceedings. *Morris, supra. See* 9 C. Wright & A. Miller, *Federal Practice & Procedure,* § 2558 (1971).

the parties.[5] In essence, the jury was instructed to find for defendant if they concluded that a deposit was in fact required to create the agency relationship. If on the contrary, they found that no deposit was necessary, they were advised to rule in favor of the Ouimettes. It seems perfectly obvious that a finding that an agency relationship depended upon a deposit would preclude the possibility of any waiver arising simply from the receipt of a commission from a legal sale made on the justified assumption that no agency relationship barred it. The district court did not err in failing to instruct on the waiver issue.

## II

### Ratification of Hutton's Actions

In the event that the jury might find that an agency relationship was in fact created between the parties, the district court submitted to the jury the following instruction:

> If you find as a fact that an agency relation existed between the plaintiffs and the defendant at the time the defendant sold share [sic] of Caesar's World stock, you must determine whether the plaintiffs ratified the sale by acceptance of the proceeds.

5. The district judge instructed the jury in pertinent part as follows:

The creation of an agency relationship can be made to depend upon one of the parties first performing a specific act. If you find based on a preponderance of the evidence, that an agency relationship was not to be formed until certain acts were performed, and that performance of those acts was an essential part of the arrangement between the parties, then such terms become a term of the agreement. It is contended that in this action the principal, the plaintiff, was required to deposit property before the defendant undertook the responsibilities of an agent. If these acts are not performed by the principal, and these acts were not prevented by an act of the agent, then performance by the agent is excused and the agent need not perform. In other words, if you find that the parties did not intend an agency relationship to arise unless the plaintiff delivered property to the defendant by the close of the business day of May 16, 1979, then the defendant is excused from holding the stock ordered for the plaintiffs.

Where no authority has been given by the principal to the agent, to do a certain act or acts for the principal, but the principal assents or acquiesces in the acts with knowledge of them, the principal is as much liable for the act or acts as if authority had been first given. The principals are bound by the act, whether it be to their detriment or advantage, to the same extent and with all the consequences which follow from the same act or acts as if done with authority. But in order to have ratification, it must appear that the principal willingly agreed to be bound while in possession of full and complete knowledge of all the material facts and circumstances relating to the unauthorized act, or with the intention to ratify or confirm the act at all events and under all the circumstances.

Plaintiffs allege that it was inequitable for the district court to submit the ratification instruction to the jury when it had refused to instruct on defendant's purported waiver. Plaintiffs rely on §§ 101 and 416 of the Restatement (Second) Agency (1958) and claim that the ratification instruction was not warranted because in accepting the $7,000 check they were merely mitigating their damages.[6]

If you find, however, that the parties agreed to form an agency relationship even if the property was not delivered to the defendant, then the defendant is not excused or discharged from performing.

6. Section 101 provides:

Ratification is not effective:
(a) in favor of a person who, by misrepresentation or duress, has caused the affirmance;
(b) in favor of the agent against the principal if the principal is obliged to affirm in order to protect his own interests; or
(c) in diminution of the rights or other interests of persons not parties to the transaction which were acquired in the subject matter before affirmance.
Section 416 provides:
Ratification or Affirmance as Defense
The ratification or other affirmance by the principal of an unauthorized act done by an agent acting in excess of his power to bind the principal releases the agent from liability in damages to the principal for having violated a duty to him, except when the principal:

Defendant on the other hand avers that plaintiffs' receipt of the profit could and did in fact constitute a ratification of defendant's unauthorized sale of the stock and it was proper for the court to submit the issue to the jury. Hutton further contends that plaintiffs misguidedly rely on §§ 101, 416 of the Restatement, *supra.* Defendant claims that said sections nullify the effect of a ratification only where the principal is obliged to affirm in order to protect itself from loss.

 The general rule as set forth in the Restatement § 98, *supra,* provides:

> The receipt by a purported principal with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such receipt he repudiates the act.

Rhode Island recognizes the doctrine of ratification as enunciated above. "Where a principal has knowledge of the facts and accepts a benefit even when the act of the agent may have been unauthorized, the principal may be held to have ratified the agreement". *Newport Oil Corp. v. Viti Bros., Inc.,* R.I., 454 A.2d 706 (1983); *Kesselman v. Mid-States Freight Lines, Inc.,* 78 R.I. 518, 82 A.2d 881 (1951).

 The facts of this case reveal that on May 25, 1979 when the Ouimettes settled their account with Hutton they had knowledge of the May 17 unauthorized sale of all their Caesar's stock. In fact, they knew that the $7,000 profit resulted from that sale. Because the Ouimettes could have repudiated the check tendered by Hutton, they were not obliged to affirm in order to mitigate damages. By electing instead to accept the payment the Ouimettes may have ratified Hutton's unauthorized sale.

Furthermore, we note that at no time before or after the Ouimettes received the $7,000 check did they indicate any interest

in rebuying the "sold out" stock. The testimony of Mr. Pliakas shows that during May 18 through the 25th, and even on the 29th, the Ouimettes could have advantageously repurchased the stock since it was selling for less or no more than they had received. The Ouimettes therefore wanted it both ways: to keep their money if the market continued to go down or to sue for lost profits if the market went up. The district court correctly instructed the jury to determine whether since the Ouimettes retained their money and failed to reinvest a ratification had occurred.

*Judgment affirmed.*

---

(a) is obliged to affirm the act in order to protect his own interests; or

(b) is caused to ratify by the misrepresentation or duress of the agent.