# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

DAVID B. CHURCH *vs.* LAWYERS MORTGAGE INVESTMENT CORPORATION OF BOSTON.

Suffolk. December 9, 1942. — November 17, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Broker*, Commission. *Contract*, What constitutes, For sale of real estate, In writing.

A broker hired by an owner of real estate to procure a purchaser thereof might properly be found to have earned his commission on evidence warranting findings that in negotiations the owner and a prospective purchaser procured by the broker orally agreed upon all the terms of a contract of sale except the time for passing papers, as to which nothing was said, that the prospective purchaser was able, ready and willing to carry out the purchase on those terms at a reasonable time, but that it never was carried out because the owner, in preparing a written memorandum of the contract to be signed by the parties, attempted to fix an unreasonable time for passing papers and further negotiations then ensuing as to that particular were unsuccessful.

Evidence warranted a finding that a contemplated written contract for the sale of real estate was to be merely a memorandum of a bargain already concluded orally specifically covering all essential terms other than those which the law would supply.

A reasonable time for passing papers will be implied by law as a term of a contract for the sale of real estate which is silent in that particular but is otherwise complete, and what is a reasonable time is a question of fact.

CONTRACT. Writ in the Superior Court dated May 24, 1937.

The action was tried before *Donahue*, J.

*W. A. Murray,* (*W. A. Murray, Jr.,* with him,) for the plaintiff.

*J. A. McCarty,* (*A. R. Smith* with him,) for the defendant.

DOLAN, J. This is an action of contract to recover a commission, alleged to be due to the plaintiff as a real estate broker in connection with negotiations for the sale of certain real estate. The jury returned a verdict for the plaintiff. The judge, under leave reserved, entered a verdict for the defendant and reported the case to this court, with provisions that if his action was correct judgment is to be entered for the defendant on the verdict so entered, but that if he was in error the case is to be remanded to the Superior Court for action upon a motion for a new trial, filed by the defendant.

The evidence would have warranted the jury in finding the following facts: In February or March of the year 1937, the defendant through one Beck, who represented it in the handling and sale of its real estate, gave the plaintiff, a real estate broker, a list of several of its parcels of real estate with the understanding that, if the plaintiff submitted a proposal for their purchase that was acceptable to and was approved by the defendant corporation, a regular commission would be paid him. Thereafter the plaintiff on behalf of a client, one Zieman, negotiated with the defendant for some time, submitting several different propositions which were not acceptable to the defendant. In submitting one of the foregoing propositions the plaintiff enclosed a check for $500, a deposit, which check was kept either by the defendant or by Beck. On March 29, 1937, as a result of a conversation between Beck and the plaintiff, the latter, by a letter dated the same day, "retracted" all previous offers and submitted a so called "final proposition" for the sale of four designated parcels of real estate, with reference to which the following terms were specifically set forth: the purchase price, the amount of cash payments or deposits, the amount and length of time of the mortgages, the rate of interest on the mortgages and the terms of amortization — interest, taxes and principal payments to be made in monthly instal-

ments.  Beck submitted the offer to the executive committee of the defendant, meeting on that day, March 29, and the committee voted to accept the offer.  The offer, which was approved and accepted by the executive committee of the defendant, was the identical offer made by the letter of the plaintiff dated March 29.  On the following day, Beck telephoned to the plaintiff and informed him that "the proposition which he submitted had been approved by his corporation and everything was O'K."  The plaintiff replied he was glad to hear it, and asked Beck to have the agreements drawn up and he would have them signed by Zieman.  At that time Beck informed the plaintiff that a $1,000 additional deposit was to be required as part of the transaction in addition to the $500 previously deposited, to which Zieman agreed.  Beck also told the plaintiff to have the agreements drawn up.  On March 30, 1937, the plaintiff wrote a letter confirming the conversation with Beck of that day "relative to acceptance of your Committee of offer made by me under date of March 29, 1937," in which he further stated that "in behalf of my client . . . I would appreciate having your attorney prepare the necessary agreements, upon receipt of which I will have same duly executed together with additional deposit of $1,000. as per agreement."  Several days later Beck called up Church and informed him that "my corporation voted to sell you the four parcels which you agreed to buy, and we find out now that we are unable to convey one of the parcels due to the fact that we don't own it.  It is owned by one of the subsidiaries of our corporation."  Beck asked the plaintiff to prevail upon Zieman to accept three of the parcels with the further understanding that "when we do get the Malden parcel . . . we will give it to you under the same terms and conditions as set forth in your approved offer if we get it."  The plaintiff took this matter up with Zieman who agreed to accept Beck's suggestion, and such assent on Zieman's part was confirmed by a letter from the plaintiff to Beck, dated April 2, 1937, in which the plaintiff stated that "my client . . . has authorized me to accept your suggestion, and that agreements drawn covering the three parcels . . . on basis set forth in

. . . [plaintiff's letter of March 29], leaving . . . [the fourth parcel] in abayence [*sic*] to such a time as your Corp. can deliver same on terms submitted. Kindly have agreements drawn covering the above, with the understanding that a regular brokers commission is to be paid by the Seller, upon receipt of which I will have same duly executed by Mr. Ziman." There was further evidence that on April 2, the matter of the plaintiff's commission was figured out to be $5,050. This was a regular broker's commission on the amount of money involved in the sales in question. On April 2 all the terms of the sale that had been discussed had been agreed upon, including the specific properties to be sold, the price, the amount of the cash deposits, the terms of the mortgages, the rate of interest and the apportionment of taxes. There was evidence that there was nothing left to be done under the oral arrangement except to embody the terms of the sale in a written agreement and for Zieman to make the additional deposit of $1,000, that the parties had talked about insurance, that Zieman wished to place his own insurance on the premises, and that this was satisfactory to Beck.

On April 10 or 12, Beck turned over to the plaintiff a written agreement of sale, dated April 5, 1937, which had been prepared by an employee of the defendant. Up to that time, there had never been discussion between Beck and the plaintiff with reference to the time of passing papers. The time for passing papers was fixed in the written agreement as of May 5, 1937. It also contained a provision that the premises were to be kept insured by the defendant. Upon being shown the agreement, Zieman said it was satisfactory to him with the exceptions that the time was unreasonably short for the passing of papers, that, "in order to arrange the necessary financing and so forth, he wanted to have the date of passing papers June 5th instead of May 5th as provided by the agreement," and that he wanted to place his own insurance. Beck said that there was "nothing doing." The jury could have found that the defendant had previously agreed that Zieman could place the insurance on the property and, as already noted, that

the time for passing papers had never been discussed in the negotiations prior to the preparation of the written agreement by the defendant.   Further negotiations proved unsuccessful and the written agreement was never executed. On May 15, 1937, the defendant sold one of the parcels in question to the Slater-Glasser Realty Corporation through another broker, one Segal, who had an office with Beck's son.   The purchase price was $1,000 more than that offered by Zieman and a commission of $2,200 was paid by the defendant to Segal.   In July, 1937, the other two parcels in question were sold through Segal, who received a commission of $1,500 as to one parcel and one of $1,200 as to the other.

The plaintiff contends that the jury were warranted in finding on the above evidence that the defendant and the plaintiff's customer had made a completed bargain to sell the properties; that such completed bargain consisted of the plaintiff's offer of March 29 as accepted on the same day by the defendant's investment committee in so far as it applied to three of the parcels, and the subsequent assent by the plaintiff's customer in accordance with the counter offer of the defendant to sell the three parcels as evidenced by the plaintiff's letter of April 2, 1937; and that all essential terms of the defendant's proposals had been met by Zieman and accepted by the defendant, and that he was ready, able and willing to purchase the properties on the terms already agreed upon.

The plaintiff further contends that by implication of law the papers were to pass in a reasonable time, that what was a reasonable time was a question of fact for the jury and that the jury by their verdict must have found that the time attempted to be fixed by the defendant in the written agreement presented to the plaintiff was not a reasonable time.   We are of opinion that these contentions should be sustained.   The jury could have found properly that the plaintiff's employment was the usual one, that is, one merely to produce a customer ready, willing and able to purchase on the defendant's terms, and that the written agreement that was to be prepared was to be no more than

a convenient memorial or record of the terms of the bargain which had already been concluded in all essential details that the law would not supply. *Bines* v. *Rosen*, 263 Mass. 562. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 182. *Lieberman* v. *Cohn*, 288 Mass. 327, 331.

The jury could also have found that in drafting the written agreement which it prepared at the request of the plaintiff and Zieman, the defendant for the first time attempted to fix the time for the passing of papers, a subject matter which had not been discussed previously by the parties, and also provided therein that the defendant should place the insurance on the properties involved. With respect to this latter subject matter it is sufficient to say, as noted above, that it had already been agreed that Zieman could place the insurance.

With relation to the time for passing papers, we are of opinion that, although nothing had been said concerning that detail in the negotiations between the parties, it cannot be said properly that the jury was required to find that something essential as matter of law to the conclusion of the bargain was left for negotiation. "The time for the carrying out of the agreement would be a reasonable time, which of course is not too uncertain or indefinite." *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 183. In *Laidlaw* v. *Vose*, 265 Mass. 500, 504, 505, an instruction to the jury, in substance, that if no express time was fixed in the talks as to when the deed was to be given, it was by implication of law a reasonable time, reasonable conduct being implied as to those terms not expressly talked about, and that, if the customer was not able, ready and willing to pass the deed in a reasonable time the plaintiff could not recover, was held to be sufficiently favorable to the defendant, and it was held that an "agreement in express words on all terms between buyer and sellers was not essential. The law would furnish the necessary terms left unexpressed." See also *Lieberman* v. *Cohn*, 288 Mass. 327, 331. And in *Buono* v. *Cody*, 251 Mass. 286, 291, where no time for the passing of papers

had been fixed in the agreement between the customer and the defendant, and the evidence tended to show that the customer produced by the plaintiff broker was ready, able and willing to buy on the terms stated in the agreement, it was held that that was enough to raise a question of fact and that the case was one for the jury.

Relying upon fragments of the testimony of Zieman that "he was ready to take title to the property on the terms of the agreement if he was given until June 5th, . . . that he wouldn't want to be bound before that date," that "he wanted time to do some more investigating after making that offer on March 29," and "that he wasn't bound by any offer Church made until he signed the agreement," the defendant argues that the negotiations were merely preliminary, "looking toward the execution of a formal written agreement when all the terms were agreed upon." Apart, however, from the fact that the plaintiff was not bound by the testimony of Zieman, which the jury could disbelieve, we think that, from a consideration of the testimony of Zieman as a whole, the jury could have found properly that on March 29, the day of final offer and acceptance, Zieman was able, ready and willing to buy at the price he had submitted, that the trade was closed, and that Zieman would have remained willing to abide by it, had not the defendant in preparing the written agreement inserted an unreasonable time for the passing of papers.

Since, as before pointed out, the jury could have found that a bargain had been completed between the customer and the defendant upon the latter's terms, including those which the law will supply, and, in the absence of an agreement as to the time for passing papers, the law will imply a reasonable time for that purpose, and what is a reasonable time is a question of fact for the jury, it cannot be said as matter of law that on all the evidence the jury could not have found properly, as they must have, that Zieman was able, ready and willing to purchase the properties involved on the terms of the bargain completed between him and the defendant, and that the time attempted to be fixed by the defendant for the passing of papers was not a reasonable

time. The plaintiff "was required to show, in order to recover, that he produced a customer who was able, ready and willing to purchase on the defendant's terms, and no more." *Barsky* v. *Hansen,* 311 Mass. 14, 16. See *Green* v. *Warren Institution for Savings,* 312 Mass. 307; *Magann* v. *Lawler Bros. Theatre Co.* 312 Mass. 317. In so far as *Herbert* v. *Jaffe,* 281 Mass. 202, may be interpreted to mean that an express agreement as to the time for passing papers is an essential term of a completed bargain, we do not follow it.

It follows from what has been said that the action of the judge in entering a verdict for the defendant under the reserved leave was erroneous and that in accordance with the terms of the report the case is to be remanded to the Superior Court for action upon the motion for new trial filed by the defendant.

*So ordered.*