CHARLOTTE SEIGEL *vs.* CAMBRIDGE-WENDELL REALTY CO.

Suffolk.    November 5, 1948. — January 5, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Broker*, Commission. *Agency*, Agent's duty of fidelity.

In an action by a real estate broker for a commission for procuring a customer for purchase of real estate of the defendant, where there was evidence that the defendant had accepted a proposal for purchase submitted by the plaintiff and that at no time after learning the identity of the customer had the defendant raised any objection that the customer was not able to purchase, and where a finding was warranted that the defendant by a subterfuge had sought to escape making a conveyance, it was not open to the defendant to contend in this court that further evidence was necessary to prove that the customer was ready, able and willing to purchase.

In an action by a real estate broker for a commission for procuring a customer for purchase of real estate of the defendant, a verdict for the plaintiff was warranted by evidence that, following an offer by the defendant to pay the plaintiff a commission for procuring a customer at a certain price, the plaintiff produced a customer willing to pay a somewhat smaller price and offered to reduce his commission accordingly, that the defendant agreed to such terms, and that the customer was acceptable to him as able, ready and willing to purchase on such terms, but that the sale was not consummated because the defendant, without good reason and without reference to the responsibility of the customer, refused to consummate it.

Evidence at the trial of an action by a real estate broker for a commission for procuring a customer for purchase of real estate of the defendant warranted a finding that a meeting of the plaintiff, the defendant, and the customer at the office of an attorney was for the purpose of drafting a written sale and purchase agreement as a mere memorial or record of a bargain already made, and did not require a finding that the defendant and the customer intended not to be bound until the written agreement had been executed.

A real estate broker properly might be found to have earned a commission for procuring a customer to purchase real estate when the owner accepted essential terms offered for the purchase, although a time for

performance was omitted from such terms: such time might be supplied by law.

An action by a woman to recover a commission for procuring a purchaser of real estate of the defendant was not barred as a matter of public policy by the mere fact that the customer was the plaintiff's son and that she acted in his behalf, where there was evidence that the defendant knew that the plaintiff was acting for her son and assented thereto, and assured the son that the sale on the terms offered by him would be carried out.

CONTRACT. Writ in the Superior Court dated November 3, 1944.

The action was tried before *Collins*, J.

*D. A. Rose*, (*J. J. Holtz & I. Cashin* with him,) for the defendant.

*M. Ulin*, for the plaintiff.

RONAN, J. The defendant excepted to the denial of a motion for a directed verdict in this action of contract brought by the plaintiff to recover a commission for procuring two customers, who it is alleged were able, ready and willing to purchase jointly on the defendant's terms certain property owned by it.

There was evidence that one Greenblatt, an officer and the principal stockholder of the defendant and authorized to act in its behalf, offered on May 22, 1944, to pay the plaintiff a commission if she would procure a purchaser who would pay $20,000 above the existing mortgages for certain property owned by the defendant and located upon Gibbs Street in Brookline; that he gave her two written statements showing its income and expenses; that she subsequently submitted four offers from her customers all of which were less than $20,000 above the existing mortgages and were rejected by Greenblatt; that about the middle of September, 1944, after Bertram Seigel, one of her customers, had been shown through the property by Greenblatt, she told Greenblatt that her customers would not pay more than $18,000 and that, as her commission based on $20,000 would be $5,500, she would be willing to reduce her commission to $3,500 if Greenblatt would accept her customers' offer of $18,000 in cash above the mortgages; and that Greenblatt agreed to this arrangement. There also was evi-

dence which indicated that a deposit of $2,000 was to be paid. There was other evidence tending to show that Greenblatt was anxious to acquire certain property owned by one Shain; that he contemplated taking the Shain property in exchange for the Gibbs Street property plus the payment of some cash; that the Shain property and the Gibbs Street property were to be conveyed to one Goodman and Goodman was to sell the Gibbs Street property to whatever customer he found; that the plaintiff in negotiating a purchase of the Gibbs Street property dealt exclusively with Goodman; and that she took a written statement from him that his commission for the sale of the property to her customers would be $50.

According to the testimony of the plaintiff, Greenblatt, on the day he accepted the offer to sell the property for $18,000 in cash above the mortgages and to pay a commission of $3,500, met the plaintiff, her son, Bertram Seigel, and Goodman at the office of Mr. Schneider, the attorney for the purchasers, Bertram Seigel and Harris Fishman, for the purpose of executing an agreement for the sale and purchase of the property "on the terms agreed upon." Mr. Schneider had represented the owner of the Shain property and a few months previously had drafted an agreement between Shain and the defendant which apparently was never executed. Greenblatt stated that he wanted to exchange the Gibbs Street property for the Shain property, and that he would convey the Gibbs Street property to Goodman who would convey to the plaintiff's customers. Mr. Schneider advised the buyers not to enter into such a transaction, that the owner of the Shain property would not want such a deal. The buyers had a certified check for $2,000, which the plaintiff and her son thought should be payable to Greenblatt but which Greenblatt and Goodman insisted should be paid to Goodman, and when Greenblatt refused to guarantee that Goodman, if the check was made payable to the latter, would convey the Gibbs Street property to the plaintiff's customers the conference came to an end.

It was for the jury to determine from a mass of conflicting evidence where the truth lay. They could find that there

was no mention of any exchange of properties until after the conference started in the attorney's office. They could adopt as true the statement of the attorney as to the exchange of properties and find that it was a subterfuge, and they could find that it was advanced by Greenblatt in an effort to escape from the bargain he had made with the plaintiff. Greenblatt learned at the conference who the plaintiff's customers were, and his insistence that the deposit be paid to Goodman and his failure to guarantee that, if that were done, Goodman would convey to the plaintiff's customers could be found to have brought the conference to an end. At no time did he ever raise any objection that the plaintiff's customers were not able to purchase. In all circumstances it is not open to the defendant to contend "that other evidence was necessary to prove that the customer was ready, able and willing to purchase." *Whitkin* v. *Markarian*, 238 Mass. 334, 336–337. *Frankina* v. *Salpietro*, 269 Mass. 292, 295. *Stern* v. *Old Colony Trust Co.* 276 Mass. 456, 457.

The evidence, viewed in the light most favorable to the plaintiff, was ample to support a finding that in pursuance of Greenblatt's offer she produced two customers who were acceptable to him as able, ready, and willing to purchase jointly the defendant's property upon terms understood by the plaintiff and the defendant as the terms of the sale, and that upon the production of these customers the offer of the defendant submitted in its behalf by Greenblatt ripened into a unilateral contract. The plaintiff, accordingly, could have been found to have earned her commission. *Maher* v. *Haycock*, 301 Mass. 594, 595. *Barsky* v. *Hansen*, 311 Mass. 14, 16. *Magann* v. *Lawler Bros. Theatre Co.* 312 Mass. 317, 318. *Church* v. *Lawyers Mortgage Investment Corp. of Boston*, 315 Mass. 1, 8.

It was for the jury to decide upon all the evidence whether the parties met at the attorney's office for the purpose of drafting a written agreement as a memorial or record of the bargain which could have been found to have been already made, or whether the parties intended that they were not to be bound until a written contract for the purchase and sale had been executed. *Beach & Clarridge Co.* v. *American*

*Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 182. *Bines v. Rosen,* 263 Mass. 562. *Duggan v. Matthew Cummings Co.* 277 Mass. 445, 450. *Lieberman v. Cohn,* 288 Mass. 327, 330. *Church v. Lawyers Mortgage Investment Corp. of Boston,* 315 Mass. 1, 5–6.

The defendant contends that, as the parties had never agreed upon the time for making the conveyance, the plaintiff cannot recover a commission. An omission to agree upon a time for performance, including the payment of the purchase price which was to be in cash, may be supplied by the law so long as the agreement itself, as could have been found here, included all the essential terms of the bargain. *Laidlaw v. Vose,* 265 Mass. 500, 504, 505. *Cousbelis v. Alexander,* 315 Mass. 729, 731. *Shayeb v. Holland,* 321 Mass. 429, 431.

The defendant finally contends that, as the plaintiff was acting for her son who was one of the proposed purchasers, the plaintiff had placed herself in a position antagonistic to the defendant and had subjected herself to influences adverse to the defendant, and is barred on the ground of public policy from maintaining the present action. The defendant relies upon the principle that an agent cannot act for one of the parties to a transaction and also secretly for the other party. The rule of law has been frequently applied where brokers have sought a commission from the seller and the buyer in real estate conveyances. *Farnsworth v. Hemmer,* 1 Allen, 494. *Walker v. Osgood,* 98 Mass. 348. *Quinn v. Burton,* 195 Mass. 277. *Dzuris v. Pierce,* 216 Mass. 132, 136. *Friedman v. Ballard,* 250 Mass. 167. *Evatt v. Willard D. Martin, Inc.* 302 Mass. 414. In the instant case, there was evidence that Greenblatt made no objection when the plaintiff's son was introduced to him as one of the intended purchasers at the conference at the attorney's office, and that after the conference Greenblatt assured the plaintiff's son that the transaction would be carried out. The jury could find that Greenblatt knew that the plaintiff was acting for her son and assented thereto. The principle invoked by the defendant, even if we assume it is applicable where an agent for the seller is bound by close ties of kinship to the buyer,

does not extend to cases where both principals assent to the agent acting in a dual capacity. *Rice* v. *Wood,* 113 Mass. 133. *Sullivan* v. *Tufts,* 203 Mass. 155, 157. *Westlund* v. *Smith,* 291 Mass. 96, 98. *Finney* v. *Long,* 216 Ala. 628. *Pentino* v. *Gallo,* 107 Conn. 242. *Brodie* v. *Andrews,* 252 Mich. 393.

*Exceptions overruled.*