CLINTON ALPHEN & another *vs.* BRYANT'S MARKET, INC., & another.

Suffolk.    October 8, 1952. — December 3, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Broker*, Commission. *Contract*, What constitutes.

In a suit in equity by a real estate broker to establish a claim against the defendant for a commission, evidence supported findings that a promise of the defendant was to pay the plaintiff a commission if he procured a customer ready, able and willing to buy the defendant's store on the defendant's terms and that payment of the commission was not made dependent upon a sale being effected or upon procurement of a discharge of a restraining order which had been obtained against the defendant by one claiming an interest in the store. .

A finding that a real estate broker procured a customer ready, able and willing to purchase a store from its owner on the owner's terms was supported by evidence of the customer's financial ability and that he orally agreed to the owner's terms and was prepared to comply with his request for a deposit to show good faith, although at the time of the oral agreement the parties thereto did not fix the amount of such deposit or any time for the passing of papers and intended to have the oral agreement incorporated in a written contract.

BILL IN EQUITY, filed in the Superior Court on November 28, 1950.

The suit was heard by *Beaudreau*, J.

In this court the case was submitted on briefs.

*Morris Kirsner*, for the defendants.

*Haig Der Manuelian*, for the plaintiffs.

RONAN, J.    This is an appeal from a final decree ordering the defendants Bryant's Market, Inc., and Joseph Buchalter to pay to the plaintiffs the amount found to be due for procuring a customer who was able, willing, and ready to

buy the business of the corporate defendant in accordance with the terms submitted to them by the individual defendant.

The judge made a report of the material facts and we have a transcript of the evidence. The evidence has been examined especially with reference to the various issues of fact as to which, it is contended, the conclusions of the judge were erroneous. The evidence consists entirely of oral testimony, much of which was of a conflicting nature and whose reliability depended to a great extent upon the appearance and manner of the witnesses whom the judge saw and heard. His findings cannot be disturbed unless shown to be plainly wrong.

We summarize briefly the facts found by the judge together with the facts we find for ourselves. The defendant Buchalter had acquired the Bryant grocery and provision store at a foreclosure sale under a mortgage held by the creditors and thereafter supervised and controlled the running of the store. He was one of the four stockholders and had full authority to act for them in disposing of the business. Buchalter promised to pay the plaintiffs, who were associated in carrying on a real estate commission business, a commission of ten per cent if they procured a customer who was able, ready, and willing to purchase the market. About the middle of May, 1950, one of the plaintiffs brought one Sarkisian to the store. After a conference with Buchalter, Sarkisian spent four days observing the business done by the market. In the last of May Buchalter and Sarkisian entered into an oral agreement by which Buchalter was to sell for $15,000 in cash and a mortgage for $15,000 maturing in eighteen months and payable $200 weekly. The market did a cash business and there was little or nothing due on bills receivable and Buchalter was to pay the bills due. Buchalter told Sarkisian that all that he wanted was to see the color of his (Sarkisian's) money, "to show me good faith . . . and you can take the place. I will turn the keys over to you, lock, stock and barrel." Sarkisian said, "we have a deal," and Buchalter

said, "the store is yours." They shook hands. Sarkisian understood from Buchalter's remarks that he wanted a deposit, the amount of which was not mentioned. Sarkisian had no money with him, and a meeting was arranged for the next day at which Sarkisian was to make a deposit. The parties met the next day but the conference lasted only a few minutes after Buchalter stated that he could not make a satisfactory settlement with one Bryant. The transaction ended there and was never completed by a sale.

There is nothing in the defendants' contention that no commission was earned until a sale had been effected. The evidence shows, and the judge was not wrong in finding, that the promise of Buchalter was the ordinary one made by a seller to a broker to pay a commission if the latter procured a customer able, ready, and willing to buy on the seller's terms. The plaintiffs were not required to bring about a sale and the payment of their commission was not dependent upon a sale being effected. They were entitled to their commission when they did all for which Buchalter promised to pay a commission. *Walker* v. *Russell*, 240 Mass. 386, 390. *Maher* v. *Haycock*, 301 Mass. 594. *Rich* v. *Mezzetti*, 323 Mass. 669. *Palmer Russell Co.* v. *Salah*, 326 Mass. 634.

Sarkisian was ready, able, and willing to buy. He so testified and also disclosed the source of his money. *Buono* v. *Cody*, 251 Mass. 286. *Driscoll* v. *Bunar*, 328 Mass. 398. The request of Buchalter to Sarkisian at the second last conference to bring a deposit to show Sarkisian's good faith could be found to have been complied with when Sarkisian was ready at the last conference to tender a certified check for $500 but which he had no opportunity to offer when the conference suddenly terminated because of the inability of Buchalter to settle his controversy with Bryant. Buchalter had accepted Sarkisian as a customer, and Buchalter apparently considered the amount of the deposit of such minor importance that he did not state any amount. He was satisfied if it demonstrated Sarkisian's good faith to carry out the transaction. See *Maksoodian* v. *Keller*,

243 Mass. 249. That no time was fixed for the passing
of papers was not material. That was one of the details
of the transaction which would be supplied by the law.
*Laidlaw* v. *Vose,* 265 Mass. 500, 505. *Church* v. *Lawyers
Mortgage Investment Corp. of Boston,* 315 Mass. 1, 5–6.
Whether the stock in trade was included in the purchase
price was a question of fact. Sarkisian had seen the stock
in trade. He was interested in having it inventoried to
see what it amounted to but whether much or little it did
not affect the purchase price. There was testimony that
Buchalter told Sarkisian that on the payment of $15,000
in cash and the giving of the mortgage "you can take the
place . . . lock, stock and barrel." We also think the
purchase price included the stock in trade.

The parties made an oral agreement to buy and sell. They
desired to have it incorporated in writing. We do not agree
with the defendants that the evidence precluded any finding
other than that they intended that there should be no
agreement between them until the writing was executed and
that any finding to the contrary would be plainly wrong.
*Lieberman* v. *Cohn,* 288 Mass. 327, 330. *Sherman* v. *Briggs
Realty Co.* 310 Mass. 408, 413. *Church* v. *Lawyers Mortgage
Investment Corp. of Boston,* 315 Mass. 1, 5–6. *Kilham* v.
*O'Connell,* 315 Mass. 721, 724–725. *Seigel* v. *Cambridge-
Wendell Realty Co.* 323 Mass. 598.

The final contention is that the acceptance of Sarkisian
was conditioned upon Buchalter making satisfactory terms
with one Bryant to free Buchalter from a restraining order
which Bryant had obtained on February 14, 1949, and which
was still in effect. There was evidence that Bryant had for
six months been associated with the plaintiffs, and that one
or both of the plaintiffs knew of the existence of the order
and had been informed that Bryant was agreeable to a sale
in any amount in excess of $20,000 so that he could get
$10,000 for what he claimed was his interest in the store.
On the other hand, there was evidence that Sarkisian did
not know of this restraining order until after he began deal-
ing with Buchalter; that the offer of Buchalter to pay the

plaintiffs a commission made no mention of this order or that the offer was dependent on having the restraining order discharged. At the final conference, Buchalter took Bryant one side, and when Bryant who wanted $10,000 refused Buchalter's offer of $500, Buchalter returned to the conference and left after stating that to go on would be a waste of time. We do not agree with the defendants that Buchalter's offer to pay a commission was made dependent on his ability to settle with Bryant. We are of opinion that his offer to pay a commission was not contingent on this fact but on the other hand was an absolute and unconditional offer to pay if the plaintiffs succeeded in obtaining a customer who was able, ready, and willing to pay $30,000 for the business of Bryant's Market, Inc. The fact that Buchalter could not settle with Bryant was no bar to the maintenance of this action any more than the action would be barred if Buchalter did not own the subject matter of the proposed sale. *Buono* v. *Cody*, 251 Mass. 286, 291. *Isenberg* v. *Williams*, 306 Mass. 86, 89. *Coney* v. *Brookline Savings Bank*, 327 Mass. 527, 528–529.

The final decree is affirmed with costs of the appeal.

*So ordered.*