**JERLYN YACHT SALES, INC., and Oklahoma Offset, Inc., Plaintiffs, Appellants,**

v.

**WAYNE R. ROMAN YACHT BROKERAGE, et al., Defendants, Appellees.**

**No. 90–1836.**

United States Court of Appeals, First Circuit.

Submitted Feb. 21, 1991.

Decided Dec. 3, 1991.

---

Merrill D. Goldfarb, Boston, Mass., on brief, for plaintiffs, appellants.

Wayne R. Roman on brief pro se.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

CAMPBELL, Circuit Judge.

The plaintiffs appeal from the district court's denial of their motion for a new trial in a diversity action for fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment and violation of Massachusetts G.L. c. 93A. Their strongest argument on appeal is that the district court failed to explain to the jury the duties of a broker, as a fiduciary, not to make secret profits and not to conceal material information from the parties he represents.

The case arises from the June 30, 1989 sale of an expensive 55–foot yacht called the "Baroness." The plaintiffs are the sell-

er, Jerlyn Yacht Sales, Inc. (Jerlyn), a Massachusetts corporation, and the buyer, Oklahoma Offset, Inc. (Oklahoma), an Oklahoma corporation. The defendants are Wayne R. Roman and his corporation, Wayne R. Roman Yacht Brokerage, Inc. (Roman). Roman is a Florida yacht broker. As the parties are located in different states, the closing was accomplished via fax and mail. The plaintiffs alleged that Roman deliberately and fraudulently concealed from each of them the respective position of the other on the price of the boat, in order to procure a larger commission for himself.

After a two day trial, the jury returned a verdict for the defendants on plaintiffs' claims for fraudulent misrepresentation and breach of fiduciary duty. The district judge ruled for the defendants on plaintiffs' unjust enrichment and M.G.L. c. 93A claims.[1] Plaintiffs moved for a new trial on the grounds that the verdict was unsupported by legally sufficient evidence, against the weight of the evidence, and based on insufficient jury instructions. The district judge denied the motion without opinion. This appeal followed.

The basic facts of the deal were largely undisputed, although there was a sharp difference in the testimony as to what information was conveyed by the defendant broker to the plaintiffs, especially to the seller. Plaintiff Jerlyn, the seller, was represented throughout the transaction by its president, Gerald Giagrando, a man with twenty-eight years of experience in the boat dealership and marina business. Jerlyn's business was to buy and sell power and pleasure boats. Giagrando estimated that he personally had brokered 150 sales of boats. He acknowledged that the standard commission for yacht brokers is 10% of the purchase price and that he was aware of this in dealing with Roman. However, he testified that in his experience, brokers never get the full 10 percent. Rather, the amount of their commission was subject to negotiation.

At some unidentified time, Giagrando gave Roman a listing for the Baroness. Giagrando's asking price was $895,000.00, including commission. On June 22, 1989, the president of Oklahoma, Ken Fleming, met with Roman and offered to purchase the Baroness for $800,000.00. Without knowing how Giagrando would react to this lower offer, Fleming (at Roman's urging), and Roman, as broker, signed one of Roman's standard form purchase agreements, which provided for Jerlyn to sell the Baroness to Oklahoma for $800,000.00, subject to inspection and sea trial by Oklahoma, who was to give written notice of the acceptance or rejection of the vessel by July 7, 1989. Fleming paid Roman an $80,000.00 deposit. On the following day, Roman telephoned Giagrando from Florida and conveyed Fleming's $800,000.00 offer. Roman testified that he told Giagrando that he had merely an "opening offer" of $800,000.00, implying, he testified, that the offer was subject to further negotiation. Giagrando testified that Roman told him that "all his customer would pay" was $800,000.00. Giagrando further testified that he indicated to Roman that he would accept the offer but insisted upon netting $775,000.00 from the sale. Roman wrote on the purchase agreement, "Net to Gerald Giagrando $775,000.00."[2] Roman then telephoned

---

**1.** The plaintiffs do not appeal from this ruling. The parties do not challenge the district court's application of Massachusetts law, rather than the law of some other state, to the issues in controversy. We note that the amended complaint did not clearly plead common law misrepresentation and breach of fiduciary duty claims. Rather, count one of this complaint alleged that the defendant committed certain acts and omissions with the intent to deceive the plaintiffs, thereby committing fraudulent misrepresentation. Count two alleged that the defendant violated the Florida Yacht & Ship Brokers Act by, inter alia, engaging in the same fraudulent conduct alleged in count one. The parties and the court interpreted count two as stating a claim that the defendant's conduct also breached his fiduciary duties to the plaintiffs.

**2.** The purchase agreement consisted of printed terms and blank spaces in which the purchase price and other information could be filled in. Paragraph two provided as follows: "The purchase price of the vessel is *eight hundred thousand dollars ($800,000.00)* plus 6% Florida State sales tax, if applicable. Upon the signing of the agreement by the PURCHASER a deposit of *eighty thousand dollars ... ($80,000.00)* shall be paid by the PURCHASER TO WAYNE R. RO-

Fleming and told him that his offer of $800,000.00 was *rejected* and that Jerlyn would accept $865,000.00.[3] Fleming increased his offer to $850,000.00 and confirmed this by letter faxed to Roman on June 23, 1989. After receiving Fleming's letter, Roman faxed to Giagrando the purchase agreement which identified $800,000.00 as the purchase price and $775,000.00 as Giagrando's net. Giagrando signed the purchase agreement and returned it to Roman.

The parties stipulated that Roman knew that Fleming had offered $850,000.00 rather than the $800,000.00 stated on the purchase agreement when Roman sent the purchase agreement to Giagrando.[4] By way of explanation, Roman testified that the purchase agreement did not constitute the final sales contract, but rather was only, as he says he told Giagrando, an "opening offer." Roman testified that there are two basic types of transactions in his business: a gross sale, wherein the seller pays the broker's 10% commission from the selling price, and the net sale, wherein the seller tells the broker what he wants to net, and leaves it to the broker to put his commission on top. According to Roman, Giagrando "was working this transaction as a net situation" and thereby authorized Roman to get his 10% commission on top of Giagrando's $775,000.00. Roman testified that Giagrando told him, "I want $775,000 net. Do whatever it takes to make a deal." Roman further testified that he sent Giagrando the pur-

chase agreement simply to confirm their agreement that Giagrando would net $775,000.00. Roman deduced that he needed a buyer to pay more than $860,000.00 to give Giagrando a net of $775,000.00 after Roman deducted his 10% commission. Roman testified that he told Fleming that Giagrando's "gross counteroffer," meaning the net plus his 10% commission, was $865,000.00, and that any price short of that would come out of his commission. Fleming then increased his offer to $850,000.00.[5]

On June 29, 1989, Roman faxed a letter to Giagrando requesting that he execute a bill of sale and return same to him via Federal Express so that the closing could occur the following day. Giagrando complied.[6] On June 30, 1989, Fleming accepted the vessel on behalf of Oklahoma and executed a closing statement reflecting a purchase price of $850,000.00. Roman paid off the mortgage on the boat and forwarded the balance, less his $75,000.00 commission, to Giagrando.

Giagrando maintained that he did not receive a closing statement stating the $850,000.00 purchase price, nor did he learn that the boat had been sold for $850,000.00, until sometime after the closing. *See* note 4, *supra.* On July 10, 1989, Giagrando faxed a letter to Roman demanding that Roman produce the closing statement and all other documents related to the sale of the Baroness. It was only in response to this demand, Giagrando testified, that Roman finally sent Giagrando the closing

MAN YACHT BROKERAGE, INC. (hereinafter called the BROKER) and shall be held in escrow by the BROKER." The underlined terms were written in by Roman. Paragraph 11 provided that, "The OWNER agrees to pay the said BROKER a commission on the sale of ten percent (10%) of the purchase price of the Vessel...." At the very bottom of the agreement was Roman's handwritten insert, "Net to Gerald Giagrando $775,000."

3. Roman testified that in communicating this rejection, he told Fleming that anything short of $865,000.00 would come out of his commission.

4. Roman testified that he informed Giagrando of the $850,000.00 purchase price a day or two later in a telephone conversation. He also testified that before the closing, he had his secretary

fax to Giagrando a closing statement bearing the $850,000.00 purchase price and that Giagrando failed to sign and return it although he had agreed to do so. Roman thus testified, in effect, that Giagrando was notified of the true sales price on June 24th or 25th, approximately five days before the closing. Giagrando denied this. He testified that Roman did not send him a closing statement bearing the $850,000.00 purchase price until after the closing. *Infra* at pp. 63–64.

5. Roman testified that he told Fleming that $850,000.00 would result in a deal, even though it would leave Roman "a little bit short on the commission...."

6. The bill of sale recited "ten dollars and other valueable (sic) consideration" as the consideration Jerlyn received for the boat.

statement bearing the $850,000.00 purchase price.[7]

Giagrando testified that he would not have agreed to accept $775,000.00 as his net had he known that Fleming had agreed to pay $850,000.00. Fleming testified that he did not learn that Giagrando had accepted his $800,000.00 offer until after the closing, when he called Giagrando to make arrangements to pick up the boat. Fleming claimed that Roman had cheated him out of $50,000.00. Roman maintained that he never agreed with Giagrando to limit his commission to $25,000.00 and that both plaintiffs got what they bargained for, *i.e.*, Fleming received the Baroness at a total purchase price of $850,000.00, and Giagrando netted $775,000.00 after Roman took his commission, which amounted to slightly less than 10 percent of the final purchase price.

On appeal, plaintiffs argue that the district court abused its discretion in denying their motion for a new trial because the verdict is against the clear weight of the evidence and the jury instructions failed to inform the jury on the nature and extent of Roman's fiduciary duty as a broker. We turn first to the alleged deficiencies in the charge.

▇ Plaintiffs argue on appeal that the district judge committed reversible error by failing to instruct the jury that it was unlawful for a broker to make "secret profits" for himself without the knowledge and consent of the seller. Plaintiffs also argue that it was reversible error not to charge that a broker's fiduciary duty includes the obligation to reveal to his principals all material facts of a transaction.

Plaintiffs' arguments on this score raise a close question. Plainly the charge given did not instruct the jury on certain specific agency principles vital to plaintiffs' claim that Roman committed a breach of his fiduciary duties both to the plaintiff seller and to the plaintiff buyer.[8] On the other hand, plaintiffs' counsel, in his requests for instructions and his objections following the charge, did a marginal job of conveying these matters. Nevertheless, we conclude that sufficient was done to alert the court to these vital principles and that the court's failure to instruct on them constituted reversible error.

The case went to the jury on special questions that required the jury to determine plaintiffs' fraudulent misrepresentation and breach of fiduciary duty claims separately.[9] In charging on the elements of fraudulent misrepresentation, the judge told the jury that the plaintiffs had to prove four elements by a preponderance of the evidence: that the defendant (1) knowingly made a false statement of (2) material fact (3) intending that the plaintiffs rely on it, and (4) that the plaintiffs actually did rely on it to their detriment. The court then turned to the second claim relating to question No. 2, which it described as the "breach of fiduciary duty" claim. The

---

7. Among the documents which Roman sent to Giagrando was a handwritten note stating "closing statement to buyer only." Plaintiffs argued this was further evidence of Roman's deception. Roman testified that he made the notation because a closing statement had been sent to Giagrando before the closing.

8. The court instructed, without objection, that Roman was the agent of both Jerlyn, the seller, and Oklahoma, the buyer—and that he was a fiduciary to both. Since the issue of the broker's dual capacity is not argued on appeal, we do not question it, although there might be questions about the concept of dual fiduciary responsibility in this situation had the issue not been waived. We note only that while the practice is generally disfavored, an agent may act on behalf of adverse parties to a transaction so long as both parties know of the agent's dual

capacity and consent to it. *See Josefsberg v. Fricke & Son, Inc.*, 172 F.Supp. 606, 607–08 (D.Mass.1959); *Seigel v. Cambridge–Wendell Realty Co.*, 323 Mass. 598, 602–03, 83 N.E.2d 262 (1949). *See generally Restatement (Second) of Agency* § 392 (1958).

9. The special questions on liability were:

1. Do you find that the plaintiffs, the seller and the buyer of the vessel, have established by a preponderance of the evidence that the defendants, the broker, made a false representation as to the sales price knowing it to be false and intending the plaintiffs to rely on this representation on which they did so to their detriment?

2. Do you find that the plaintiffs, the seller and the buyer of the vessel, have established by a preponderance of the evidence that the defendants, the broker, breached their fiduciary duty as a broker?

court said that "one who is acting as a broker in the sale or purchase of property has a fiduciary duty and must act with good faith towards his principals." Asserting that the defendant Roman "was the agent of the plaintiffs Jerlyn Yacht Sales and Oklahoma Offset, Inc.", the judge went on to charge as follows,

> The fiduciary relationship imposes a duty on the broker that the broker deal fairly and honestly with its principal and imposes the responsibility on the broker to disclose any conflicts that might exist between the principal's interest and the agent's interest which might make the agent act in his own best interest at the expense or detriment of his principal.

> It is for you to determine whether the defendants as broker violated their fiduciary duty to deal fairly and honestly with the plaintiffs or to disclose to the plaintiffs their potential conflict of interest if any—if you find that one exists. If you find the defendants breached their duties to act in good faith as a broker for the plaintiffs as a fiduciary, you then must determine what damages, if any, were proximately caused by such action or omissions which constituted the breach of duty.

> In essence, a broker is an agent and is obligated to act in good faith to his principals. It will be your judgment to determine on the basis of the evidence whether the plaintiffs have established by a preponderance of the evidence that the defendants breached this duty of good faith.

Prior to the court's charge both parties had submitted requests for jury instructions. Plaintiffs' requests had included the following:

> 2. A principal's relation with his broker is one of trust and confidence, and a broker owes a duty of making full disclo-

sure of his interest in transactions instead of making secret profits for himself[.] *Birch v. Arnold & Sears [Inc.]*, 288 Mass. 125, 192 N.E. 591 (1934), *Dowd v. Iantosca*, 27 Mass.App.Ct. 325 [538 N.E.2d 33] (1989).

> 6. It is a breach of the fiduciary duty for a broker to merely transmit to the seller the net amount to be received by the seller from the sale, where such net sum, although acceptable to the unknowing seller, was substantially smaller than the amount of the concealed offer, with the difference being retained by the broker. *Liability of Real Estate Broker or Agent to Principal for Concealing or Failing to Disclose Offer*, 7 ALR 3rd 693, 702.

After the charge, plaintiffs' counsel stated at sidebar, "Your Honor, from the plaintiffs' viewpoint we'd like you to give further instruction on the secret profit and the fact that, as I asked in request No. 6 that they have to transmit, the broker has the absolute duty to transmit all of the material to the parties. I don't believe that you have gone far enough." [10] The court responded, "Yeah, you cite an ALR but you don't cite any particular case so I'm going to—I think that I have adequately covered it, this responsibility of the fiduciary so I'm going to decline your request." Counsel then queried: "How about on No. 2, Your Honor, about the secret profit to induce where I do cite two Massachusetts cases, Your Honor." The court responded that it thought it had covered that also and denied plaintiffs' counsel's request for an instruction on the "secret profit" principle embodied in request No. 2. Counsel noted his objection.

. After deliberating for thirty-five minutes, the jury returned with the following question: "On the judge's instruction to

10. The principle that a fiduciary has a duty to disclose all facts within his knowledge which are or may be material to his employer was not embodied in plaintiffs' request No. 6. Rather, that principle was embodied in plaintiffs' request No. 7, which provided, in relevant part, that "[a] broker must act fairly and in good faith with his principal and he is under legal obligation to make full, fair and prompt disclo-

sure to his employer of all facts within his knowledge if they are or may be material to the matter in connection with which he is employed." Request No. 7 cited accurately to a Florida case standing for the stated proposition, namely, *Hersey v. Keyes Co.*, 209 So.2d 240 (Fla. App.1968), *cert. denied*, 214 So.2d 623 (Fla. 1968).

the jury relating to question two (breach of fiduciary duty), what were the four points mentioned and did one or all four points constitute a breach of fiduciary duty as broker?" The judge observed that the "four points" identified in the charge constituted the elements of fraud, not breach of fiduciary duty. The judge then announced his intent to reread his charge on the breach of fiduciary duty and did so. After the jury retired to resume deliberations, plaintiffs' counsel reiterated his objection.[11]

■ Federal Rule of Civil Procedure 51 provides, in relevant part, that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." This court has long held that simply referring by number to a request filed prior to the charge is not sufficient to preserve an objection to the court's failure to give the requested instruction. *See, e.g.,* *United States v. Lachmann,* 469 F.2d 1043, 1044 (1st Cir.1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973) ("mere blanket enumeration of requests by number is, prima facie, not enough"); *cf. Charles A. Wright, Inc. v. F.D. Rich Co.,* 354 F.2d 710, 713 (1st Cir.), *cert. denied,* 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966); *Marshall v. Nugent,* 222 F.2d 604, 605 (1st Cir.1955) (where counsel filed more than fifty requests for instructions, objections to the denial of certain requests by stating only the number of the requests were not sufficiently specific).

Given this rule, plaintiffs' objection to the denial of request No. 6 was insufficient. Counsel referred only to the number of the request, and did not articulate its substance nor point out its application to this case. "It is not good enough simply to ask for an instruction. The trial judge must be provided with at least some explanation of the basis for that request, particularly where the court has made it clear that he does not see the relevance of the proposed instruction." *Linn v. Andover Newton Theological School, Inc.,* 874 F.2d 1, 5 (1st Cir.1989) (one-sentence objection stating requested instruction without elaboration insufficient to preserve objection). We hold that plaintiffs' counsel's passing reference to request No. 6 was insufficient to preserve his objection to the denial of that request on appeal.[12]

Plaintiffs' other objections were to the denial of an instruction on the "secret profit principle" embodied in plaintiffs' request No. 2 ("... a broker owes a duty to disclose his interest in a transaction rather than making secret profits for himself") and to the denial of a charge that a broker has a duty to disclose all material facts of a transaction to his principals.

■ The above proposals related to basic agency principles going to the heart of the present dispute. It is a fundamental principle of agency and fiduciary law that, "[i]n the usual case, it is the agent's duty to further his principal's interests even at the expense of his own in matters connected with the agency." *Restatement (Second) of Agency,* § 393, comment b. Toward that end, "[u]nless otherwise agreed, an agent who makes a profit in connection

---

11. The sidebar conference that occurred after the jury departed went as follows:

The Court: Anything? I just read basically the same instruction.

[Plaintiffs' Counsel]: Right. Well, again, the only thing I would reiterate what I said earlier, Your Honor, which was—

The Court: Request No. 2.

[Plaintiffs' Counsel]: That's correct. And basically that in my opinion the fiduciary duty includes full disclosure of all material facts. And I think that might have been helpful for them to understand that and that if they—if the jury finds that there was a failure to disclose

some material fact which is something of importance that might have helped make up somebody's mind in the transaction, then that would be a breach of the fiduciary duty.

The Court: All right. As I indicated before, I will rule the same way, feeling that the instruction given covered the facts of this case.

[Plaintiffs' Counsel]: All right....

12. Where plaintiffs' counsel articulated the substance of his request No. 7 while directing the court to his request No. 6, his reference to request No. 6 appears to have been a slip of the tongue.

with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal." *Id.,* § 388. This duty extends to any unexpected or incidental profits acquired during the course of a transaction. Thus, absent an agreement to the contrary, "an agent who, without the knowledge of the principal, receives something in connection with, or because of, a transaction conducted for the principal, has a duty to pay this to the principal even though otherwise he has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount." *Id.,* comment a.

 That an agent breaches his fiduciary duty to his principal by earning a "secret profit" or commission is a rule well established in Massachusetts. It applies in cases where the agent derives a secret profit by surreptitiously serving third parties whose interests are adverse to those of his principal. *See, e.g., Raymond v. Davies,* 293 Mass. 117, 119–20, 199 N.E. 321 (1936); *Little v. Phipps,* 208 Mass. 331, 333–34, 94 N.E. 260 (1911) (agents forfeited right to compensation for their services where they earned secret profits).[13] It also applies where the agent himself acts as an adverse party to his principal without the principal's knowledge or consent. *See Birch v. Arnold & Sears, Inc.,* 288 Mass. 125, 136, 192 N.E. 591 (1934) (stockbrokers violated fiduciary duty by acting as dealers instead of brokers with respect to plaintiff customer, thereby earning secret profits on transactions undertaken with customer's funds). *See generally* 12 Am.Jur.2d § 86 ("The law does not permit [a broker] to advance his own personal interests by discharging the duties of his position in such a manner as to make a secret profit for himself.") The *Restatement* makes clear that even in the absence of a corrupt intent on the part of the agent, where the agent

secures a profit unbeknownst to the principal in connection with a transaction undertaken on the principal's behalf, the agent has an affirmative duty to account and pay over that profit to the principal, absent an agreement between the agent and the principal to the contrary.

The question whether Roman's $75,000 commission included a "secret profit" was a critical issue in this case. It was stipulated that Roman advised the buyer, Fleming, that the seller, Giagrando, had *rejected* Fleming's $800,000 offer even though, according to Giagrando, he (Giagrando) had told Roman he accepted it—an acceptance further indicated when Giagrando signed the agreement stating an $800,000 price. Thus the jury could have found that Roman concealed information as to the seller's acceptance from his principal, Fleming, in order secretly to enhance his own commission.

There was further evidence, undisputed, that Roman did not inform Giagrando of Fleming's $850,000 offer before faxing to Giagrando the purchase agreement indicating an offer of only $800,000. While the agreement boiler plate spoke of a 10 percent commission for the broker, the fact that it provided for a $775,000 net for Giagrando and a $800,000 selling price was consistent with Roman's having agreed to a reduced commission, as Giagrando testified he believed was the case. To be sure, Roman implied in his own testimony that soon after faxing Giagrando the agreement with the $775,000 net, he conveyed information to Giagrando that would have disclosed the higher offer. Also Roman suggested, without elaboration as to details, that he had an understanding with Giagrando that he would be free to negotiate a 10% commission on top of Giagrando's $775,000 net. The jury was never told,

---

**13.** *Little v. Phipps* observes that an agent who secures a secret profit or commission loses his right to receive *any* compensation for his services on the ground that "he has taken a position wholly inconsistent with that of agent for his employer." 208 Mass. at 333–34, 94 N.E. 260. However, the rule that an agent who is unfaith-ful to his trust may be denied compensation is not an absolute one. "[T]he question whether a fiduciary who has not been entirely faithful will be denied compensation to which he would otherwise be entitled ultimately rests in the discretion of the court." *Shulkin v. Shulkin,* 301 Mass. 184, 194, 16 N.E.2d 644 (1938).

however, that unless it found an understanding of the latter sort, Roman would have violated his fiduciary duty by conducting secret negotiations with the purchaser for his own benefit.[14]

Intertwined with the question of violation of the "secret profit" principle was the issue of whether Roman had violated the fundamental duty of a fiduciary to disclose all facts material to his employment to his principal. *See Veasey v. Carson*, 177 Mass. 117, 120–21, 58 N.E. 177 (1900) ("a broker ... is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the principal in his action; and if he has failed to come up to this standard of duty he cannot recover [his commission]"). The court did not inform the jury of this vital principle. Plainly it was an open question whether Roman did not violate this principle here when (a) he may have concealed from Fleming information that Giagrando had accepted the former's $800,-000 offer, and (b) he faxed the $800,000 agreement to Giagrando for signature without advising Giagrando that Fleming had, in fact, raised his offer to $850,000.[15] Clearly it would be highly material to Fleming whether his lower offer had been accepted. And while Giagrando might have remained content with his $775,000 net even when informed of the buyer's higher bid, he testified he would not have been. A $50,000 raise in the buyer's offer could certainly have been found "material" by

the jury, hence subject to mandatory disclosure by the broker to his principal.

Knowledge of the above legal principles was, in any event, key if the jury was to decide this case on the basis of a correct understanding of the law. The more difficult question is whether counsel's rather inarticulate objections to the charge were sufficient to preserve them on appeal. In the circumstances, we believe they were.

■ When presented with incorrect, erroneous or insufficiently articulated requests, a court is normally excused from correcting and accepting them. However, where the matters presented are of fundamental importance, even "imperfect proposed instructions may alert the court to the need of a particular charge." *Ouimette v. E.F. Hutton & Co.*, 740 F.2d 72, 76 (1st Cir.1984). Moreover, "[e]ven without requests the court has a duty to correctly and adequately charge the jury on the controlling issues in the case." *Id.* Here there *were* requests of sorts, hence we do not consider what the court's duty might have been absent any requests at all. Counsel's reference to request No. 2 and to the case citations there, and his mention of "the secret profit" served to alert the court to its failure to charge at all on this subject, a most fundamental one. *Compare Bosse v. Litton Unit Handling Systems, Etc.*, 646 F.2d 689, 692 (1st Cir.1981) (objection to court's failure to give certain numbered requests insofar as they spoke of foreseeability was sufficient to alert court to total absence of foreseeability instruc-

14. Even when a principal authorizes an agent to act on his own behalf in a transaction, the agent remains under a duty to disclose all relevant facts which the agent "should recognize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms." *Restatement (Second) of Agency* § 390, comment a. Where the undisputed evidence showed that Roman did not inform Giagrando of Fleming's $850,000 offer before faxing Giagrando the purchase agreement to secure his commitment to a $775,000 net, Roman's duty of fair dealing would be satisfied only if Roman reasonably believed that when Giagrando signed the purchase agreement, he understood that Roman would be seeking more than the $800,000

"opening offer" and retaining all that he could get as his commission. *Id.*

15. Although ratification was not pleaded as a defense, if the jury found, as Roman testified, that Roman notified Giagrando of the higher sales price before the closing, Giagrando's action in proceeding to close could be taken to have ratified Roman's receipt of a $75,000 commission only if the ratification was not induced by fraud, and Giagrando was not compelled to ratify the transaction to protect his own interests. *Compare Doujotos v. Leventhal*, 271 Mass. 280, 284, 171 N.E. 445 (1930) (seller allowed to recover for broker's deceit in understating buyer's offer, notwithstanding waiver defense). *See generally Restatement (Second) of Agency* § 416 (1958).

tion).[16] As for the even more basic affirmative duty of a fiduciary to disclose to his principal all material facts concerning the transaction with which he is entrusted, counsel twice objected to the absence of any instruction on that point. It is true that counsel misdirected the court to his request No. 6, instead of referring to No. 7, the place where the rule was actually laid out. Counsel, however, included some description of the principle in his objection made directly after the initial charge and he gave a clear description of the omitted matter after the supplemental charge.

We hold that the court should have instructed on these important concepts and that it was error not to have done so. We also hold that the omissions were errors of "sufficient magnitude to require a new trial." *Allen v. Chance Manufacturing Co.*, 873 F.2d 465, 469 (1st Cir.1989). On the record as a whole, we cannot say that the jury would have found no breach of fiduciary duty had it been properly instructed on Roman's affirmative duties as a broker. Given the strong evidence of concealment when Roman told Fleming that Giagrando had rejected Fleming's initial $800,000 bid, and Roman's failure to inform Giagrando of Fleming's $850,000 offer before sending the purchase agreement (which bore an $800,000 price) to Giagrando for execution, the jury's attention should have been focused on the broker's duty to avoid secret profits and to disclose all material facts to his principals. The court's charge as given only informed the jury that a broker has a general duty to disclose possible "conflicts of interest" that *might* make an agent act in his own interest at the expense of his principal. This was an understatement. A fiduciary's duty goes much farther. Absent an agreement to the contrary, a broker must put his principal's interest first and refrain from competing with the principal as to the subject matter of the agency.

*Restatement (Second) of Agency* § 393. He must be "up front" with his principal at all times.

■ As the court's instructions to the jury on the broker's fiduciary duties were fatally deficient, there must be a new trial on the claim that Roman violated such duties both to Fleming and Giagrando. We also hold that the judgment denying plaintiffs' fraudulent misrepresentation claim must be vacated leaving that claim open to retrial, as the inadequate jury instructions concerning Roman's duties as a fiduciary may have misled the jury in deciding that claim. The instructions on that claim required the making of a false statement of material fact. There was no reference to possible fraud where a fiduciary conceals facts he is required, by his fiduciary duty, to reveal. *Compare e.g., Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 376 n. 4 (1st Cir.1991); *Friedman v. Jablonski*, 371 Mass. 482, 485 n. 3, 358 N.E.2d 994 (1976) (silence will not constitute fraudulent concealment in the absence of a fiduciary relationship). Where Roman was in a fiduciary relationship with Fleming and Giagrando, and was not dealing at arm's length with them, any failure by Roman to reveal to Fleming Giagrando's acceptance of $800,000, and any failure to disclose Fleming's $850,000 offer before securing Giagrando's commitment to a $775,000 net, could be found to be silence that was tantamount to fraud. *Compare Emmons v. Alvord*, 177 Mass. 466, 470, 59 N.E. 126 (1901) (where broker was held liable for understating buyer's offer to the seller, the court noted that "but for the contract of agency, the [broker's] concealment and misrepresentation might not be a tort"). We think that the buyer's and seller's claims of fraud and breach of fiduciary duty are so intertwined that a new trial on both counts is required.[17]

---

**16.** To be sure, plaintiffs' request No. 2 was arguably defective. Given as worded, the jury might have construed the secret profit instruction as a direction to find that the broker in fact had secured a secret profit in this case. While the trial judge might have declined plaintiffs' "secret profit" instruction as one which placed undue weight on plaintiffs' case, *see, e.g., Computer*

*Identics Corp. v. Southern Pacific Co.*, 756 F.2d 200, 204 (1st Cir.1985), the judge nonetheless had a duty to submit the underlying issue to the jury.

**17.** Plaintiffs' claims based on theories of unjust enrichment and M.G.L. c. 93A are foreclosed, as

We need not reach the issue of whether the verdict went against the weight of the evidence. The judgment for the defendant as to the plaintiffs' fraudulent misrepresentation and breach of fiduciary duty claims (counts one and two) is vacated and the case is remanded to the district court for a new trial in accordance herewith. In other respects, the judgment is affirmed. Costs to plaintiffs.

So ordered.

plaintiffs did not appeal from these rulings. *See* note 1, *supra.*